[Crim. No. 2742. In Bank.—April 13, 1925.]

## THE PEOPLE, Respondent, v. CHARLES CRAIG, Appellant.

[1] CRIMINAL LAW—MURDER—JURIES AND JURORS—CHALLENGES FOR CAUSE—PEREMPTORY CHALLENGES.—In a prosecution for murder there was no prejudicial error in the denial of challenges of jurors for actual bias, which rulings the defendant claims compelled him to exercise peremptory challenges to said jurors, thereby reducing his peremptory challenges to that extent, where the record shows that the jurors selected after his peremptory challenges were exhausted were accepted without objection and that no objection could have been made to their qualifications to serve as jurors in the case.

[2] ID.—DISCRETION.—The trial court is vested with a wide discretion in the exercise of its judgment as to whether a juror has shown himself or herself to be competent or disqualified to serve in a trial of a cause, and where there are inconsistent statements made by prospective jurors on their *voir dire*, the decision of the trial court is conclusive.

[3] ID.—ERRONEOUS DISALLOWANCE OF CHALLENGE—LACK OF PREJUDICE.—The rule is that an erroneous disallowance of a challenge for cause to a juror is not prejudicial even though the defendant finally exhausted his peremptory challenges, if it does not appear that he had occasion or desired to use an additional peremptory challenge or that the jurors finally accepted were not entirely satisfactory to him.

----

1. See 16 R. C. L. 291; 15 Cal. Jur. 432.

2. See 16 R. C. L. 289.

3. Improper refusal to sustain challenge to juror for cause as warranting reversal where injured party exhausts his peremptory challenges, notes, 9 Ann. Cas. 279; Ann. Cas. 1915D, 97.

[4] Id.—Misconduct of District Attorney—Curing of—Admonition of Court.—In a prosecution for murder, where a birth certificate offered by the defendant to show the latter's age was admitted in evidence over the district attorney's objection that it was not properly certified to by a judge or justice, the prejudicial effect of alleged misconduct of the district attorney in his argument in contending that the certificate did not correctly state defendant's age and calling upon the jury to make their own observations of the defendant and determine whether or not his age was not greatly in excess of that shown by the certificate, which conduct of the district attorney was not objected to until the close of the argument, was cured by the court's admonition at that time that any statements made by either the district attorney or counsel for the defense were not evidence in the case unless such statements were sustained by evidence admitted by the court and that it was the duty of the jury to disregard them.

[5] Id.—Evidence—Prior Conviction—Admission of Judgment.—The usual method of making proof of a prior conviction is to ask the witness who has suffered such a conviction if he has been theretofore convicted of a felony, and if he denies it, to produce a copy of the judgment of conviction, or if he answers in the affirmative, he may then be asked of what specific crime he was convicted; but there is no prejudicial error in offering the judgment of former conviction in evidence, rather than eliciting the same information from the witness.

[6] Id. — Instructions — Punishment — Discretion of Jury.—In a prosecution for murder an instruction which is an amplification 'of section 190 of the Penal Code, providing that the jury may, within their discretion, in case they find the defendant guilty of murder in the first degree, pronounce a sentence that will relieve him of the extreme penalty of the law—to which has been added with judicial sanction—that such discretion is not an arbitrary discretion but is limited to a determination of which of two punishments shall be inflicted and is to be employed only when the jury is satisfied that the lighter penalty should be imposed, is not prejudicially erroneous.

---

(1) 17 C. J., p. 294, n. 58.   (2) 35 C. J., p. 312, n. 97, p. 404, n. 30.   (3) 17 C. J., p. 294, n. 58.   (4) 16 C. J., p. 917, n. 67. (5) 40 Cyc., p. 2640, n. 87.   (6) 30 C. J., p. 425, n. 86.

APPEAL from a judgment of the Superior Court of Tehama County and from an order denying a new trial. Walter E. Herzinger, Judge.   Affirmed.

---

5.  See 28 R. C. L. 626.

The facts are stated in the opinion of the court.

W. P. Johnson for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

SEAWELL, J.—The defendant and one Baker were jointly charged by an information filed against them with the crime of murder, which consisted of having killed and murdered with malice aforethought, on July 10, 1924, in the county of Tehama, this state, one Samuel Hermanson. On the morning of the trial, and before the jury was impaneled, defendant Baker withdrew his former plea of not guilty and entered a plea of guilty of murder of the first degree and was subsequently sentenced upon said plea to life imprisonment in the state penitentiary. Upon the trial of this defendant, Charles Craig, the jury returned a verdict of murder of the first degree against him without recommendation, which verdict carried with it under the law of the state the imposition of the death penalty. From an order denying a motion for a new trial and the judgment of the court imposing the death penalty, this appeal is taken. The sufficiency of the evidence to sustain the judgment is not questioned and it will not be necessary to state with minute detail the facts and circumstances which conclusively establish the guilt of this defendant, and the guilt of his associates in crime as well.

On the morning of July 10, 1924, shortly after the Bank of Tehama, located at Red Bluff, Tehama County, had opened its doors for business, the defendants, Charles Craig and Jack Baker, entered said bank and by the use of fear compelled its teller, Frank C. Joy, to place within a satchel which Craig carried, currency and coin, the property of said bank, aggregating the sum of $1,906.31. Baker exhibited no deadly weapon and it is claimed that he had none at this time, but Craig displayed a pistol to the teller, which he held in such a way as to be partially concealed from the view of the few persons who chanced to be in the bank at the time, and in whispering tones, and in a threatening manner, gave the teller to understand what his mission was at the bank. Craig took the satchel and its contents and

with his associate left the bank and both leaped into a blue painted Hudson automobile, badly weather-stained, which they had parked near the bank building, and began their flight from the scene of the crime.

The news of the robbery was immediately broadcasted by telephone service, messengers, and word of mouth to farm and ranch houses and public places such as could be reached along the highways leading out of the county, describing the defendants and the automobile in which they were traveling, with instructions to apprehend all such persons as might be reasonably suspected of the commission of the crime. The route taken by the bandits, a short way out of Red Bluff, became very rough in spots and after they had traveled about twenty-six miles easterly from Red Bluff the rear right wheel of their automobile was entirely wrecked and they were forced to abandon it by the roadside. They then continued their flight easterly on foot and after traveling about two miles further they met the deceased, Samuel Hermanson, who was driving his Ford runabout, and was traveling westerly toward Red Bluff, in response to a message descriptive of the persons and the automobile, which he had received from the sheriff's office informing him of the bank robbery and requesting him to apprehend such strangers as might answer to the description sent out. Hermanson resided at the Lyman ranch, which was situate a few miles east of the point on the road at which he accosted the defendant and Baker. Before leaving the Lyman ranch to join in the search, Hermanson placed a loaded automatic rifle in his Ford runabout and buckled a holster containing his revolver and also an ammunition belt, containing cartridges, about his person.

Defendant Craig had changed his clothing from dark to light colored apparel near the place where the Hudson machine had been abandoned. The Hudson machine was not within sight of the locality where Hermanson met Craig and Baker. Craig observed Hermanson slowing down his car as he approached them and anticipated that he would interrogate them in connection with the crime. They halted, Craig taking a position on the north side of the road and Baker stepped to the south side of the road. Craig was the first to speak and he asked Hermanson where they could obtain water and what the distance was to the nearest garage.

Hermanson then told them of the bank robbery and expressed doubt as to Craig and Baker being the persons wanted, as they did not seem to fit the description sent out, but he decided, nevertheless, to take them into Red Bluff. Both expressed a willingness to go. He made an incomplete search of both, holding his revolver in his hand while doing so. Craig carried his coat on his arm and his revolver, which was in the inner pocket of his coat, was overlooked by Hermanson. His engine had stopped and as he got into the car he asked them to crank it, but each responded that he did not know how to crank a car. Hermanson then got out and cranked the car, got back into it, placed the rifle at his right side and the revolver between his limbs, handle up, with the barrel resting on the cushion of the seat. He directed Craig and Baker to take positions on the running-board. Craig stepped on the right running-board and Baker on the left. As Hermanson threw the car into gear, Baker, so he claims, upon signal from Craig, grabbed the revolver and Hermanson attempted to grab the rifle at his right, but Craig had also grabbed it and a struggle ensued for the possession of the arm. Hermanson was shot five times in a brief space of time, any one of the wounds, except possibly one, would probably have proved fatal. His lungs, liver, and the abdominal cavity were pierced by bullets as the struggle for the rifle ensued and as a finale of the assault he was deliberately shot two inches above the right eye by Craig, the weapon having been held near to his head, the bullet entering the brain and lodging against the rear wall of skull. The physicians testified that in their opinion death instantly followed. Some of the wounds upon his body were inflicted by shots aimed by Baker. During the struggle the automobile, which had been set in motion and which was unguided, left the road and traveled over rough, rocky ground and plowed its way through chaparral and landed against a barbed-wire fence after breaking down a fence post, and then stopped. The engine had ceased running. Hermanson's body, stripped of the pistol, holster, ammunition belt, and cartridges, was ruthlessly thrown from the car and the machine was appropriated by the bandits. They again set out on their way, but the car was without water and the gasoline was low. The personal effects of Hermanson of a telltale character were disposed of along the

roadside as they traveled. All were afterward recovered. Two neighbors of Hermanson had been informed by him but a short time before his death of the robbery and they also went in the direction that Hermanson had gone in pursuit of the robbers and to give assistance to Hermanson if need be. The neighbors, who were driving a Ford automobile, were overtaken by Craig and Baker on their return trip home. Upon being questioned the bandits said to them that they were on their way to Reno. The robbery was casually referred to by them. Their car was steaming badly and they inquired as to where they could get water. They were directed to the Lyman ranch, which was a few miles ahead of them, and, following directions, drew up at the Lyman ranch, the domicile of Hermanson. The two neighbors referred to became suspicious that these men were the bandits and they followed closely behind them. They also drew up at the Lyman ranch-house. Hermanson's automobile had been damaged and was not at once recognized by the workmen, who were at the ranch when it was driven into the house yard. Craig asked for water and was directed to a place where it was obtainable. His hands appeared to be unusually dark, and he washed them. The automobile seat was bloodstained and the cushion and top were bullet pierced. It bore other unmistakable evidence of the deadly struggle. It was soon discovered that Hermanson's name was upon the license plate inside the car. Craig and Baker were placed under guard and held until the arrival of the sheriff, which was shortly thereafter, and he took appellant and his associate into custody. The evidence against the bandits unfolded at once. They made several confessions of guilt and gave detailed statements of the manner in which the murder was executed. Further details of the deadly assault would serve no purpose except, possibly, to show that both Craig and Baker were guilty of a deliberate murder, committed in a vicious and merciless manner. The circumstances of its execution further show that its perpetrators possessed wicked and malignant hearts.

[1] Appellant insists that the court committed reversible error by the denial of challenges made for actual bias at the trial of the cause to four certain jurors, which ruling compelled the defendant to exercise peremptory challenges upon said jurors, thereby reducing his peremptory challenges

to that extent.  Four other jurors were accepted after appellant's peremptory challenges had been exhausted, all of whom, it is now contended, would have been peremptorily challenged had appellant not been required to exhaust his challenges upon said jurors whom he claimed should have been dismissed from the jury upon his challenges for actual bias.  There are two answers to this claim of error.  [2] First, the court is vested with a wide discretion in the exercise of its judgment as to whether a juror has shown himself or herself to be competent or disqualified to serve in the trial of a cause.  We have examined the record as to the grounds upon which bias was predicated as to the four jurors upon whom peremptory challenges were used.  While it is true that one of the jurors, at least, seemed to entertain a strong opinion, wholly founded, however, upon public rumor or statements in public journals or common notoriety, nevertheless said juror and the other three, upon crucial tests being applied by the court as to whether or not they could and would entirely set aside and disregard the opinions thus formed, answered in the affirmative.  Even if we concede, upon an inspection of the record merely, that had we been in the trial court's place we would have allowed the challenges, yet we cannot say under the decisions of this state that it was an abuse of discretion for the trial court to have disallowed the challenges.  The answers of these jurors to questions propounded both tended to show disqualifications—provided they fully understood the questions propounded—and also indicated competency to sit as jurors.  The trial judge whose position for a proper determination of the question was superior to our own, which must be limited to a mere examination of the record, ruled that said persons were competent to act as jurors and we are not convinced that his ruling constituted an abuse of discretion.  Where there are inconsistent statements made by prospective jurors on *voir dire* the decision of the trial court is conclusive.  (*People* v. *Edwards*, 163 Cal. 752 [127 Pac. 58]; *People* v. *Loper*, 159 Cal. 6 [Ann. Cas. 1912B, 1193, 112 Pac. 720]; *People* v. *Riggins*, 159 Cal. 113 [112 Pac. 862]; *People* v. *Ryan*, 152 Cal. 364 [92 Pac. 853].)  Second: We have carefully examined the testimony given by the four jurors on *voir dire* who were accepted and find that no objection was made or could have been made to their qualifica-

tions to serve as jurors in the case. The only information they had was clearly such as was founded upon public rumor, or statements made in public journals or common notoriety. Each of them was so clearly within the rule of qualification that no objection was made by counsel for the defendant to their competency to serve as jurors. **[3]** By all of the authorities of this state touching like situations the rule is that an erroneous disallowance of a challenge for cause is not prejudicial even though the defendant finally exhaust his peremptory challenges if it does not appear that he had occasion to or desired to use an additional peremptory challenge or that the jurors finally accepted were not entirely satisfactory to him. (*People* v. *Kromphold,* 172 Cal. 512 [157 Pac. 599]; *People* v. *Schafer,* 161 Cal. 573 [119 Pac. 920]; *People* v. *Harrison,* 18 Cal. App. 288 [123 Pac. 200]; 8 Cal. Jur. 610.) The above cases stated the precise situation of the defendant in the instant case. In the case of *People* v. *Kromphold,* quoting approvingly from *People* v. *Schafer,* it is said; "It is entirely consistent with the record that the twelve jurors who actually tried the case were absolutely satisfactory to defendant, and that he desired all of them to serve and would not have excused any one of them if he had been given the opportunity. After judgment, the contrary should not be presumed."

**[4]** The second point that appellant urges rises out of the alleged misconduct of the district attorney concerning his treatment during his argument to the jury of a birth certificate offered in evidence, by which it was claimed that defendant Craig was proved to be of an age not beyond twenty-two years. The certified copy of the birth record of defendant Craig, attested by the county clerk's record of the county of Calhoun, state of Illinois, was received in evidence as being the birth certificate of the defendant. It contained no certificate, however, by any presiding judge or justice of that county or state that the attestation was in due form. The district attorney objected to it upon the ground that it was not properly certified to, but his objection was overruled. In his argument to the jury the genuineness of the certificate was challenged and some caustic remarks were indulged in as to how it must have been obtained. In support of his position that it did not correctly state the age of the defendant he called upon the jury to make

their own observations of the defendant and apply their human experiences in determining whether or not the defendant's age was not greatly in excess of twenty-two years. No objection was made at the time the alleged misconduct of the district attorney was committed. At the close of the district attorney's argument the attorney for the defendant assigned, as misconduct on the part of the district attorney, the statements impugning the faith and credit that should be given to the certificate of birth. The court immediately instructed the jury that any statements made by either the district attorney or counsel for the defendant were not evidence in the case and unless such statements were sustained by evidence admitted by the court it was the duty of the jury to disregard any such statements. This admonition was repeated again in the general instructions. We think the court's admonition cured any possible prejudice that may have accrued to the defendant. Whether or not the defendant was precisely twenty-two or had passed that age was not a question of any great moment. The evidence shows him to have been the directing mind in the commission of both crimes. Admittedly he was four years beyond the age of eighteen, an age which subjected him to the full consequences of a wilful murder. Again, the defendant was in the presence of the jury and if he had the appearance of having attained an age beyond that which the birth certificate indicated, the jury had a right to consider such a circumstance. If the challenge of the district attorney was without reasonable foundation the statements would have reacted upon the prosecution. We are of the opinion that the statement of the district attorney in this respect could not have influenced the jury to return a verdict different from the one which it found.

[5] It is next urged that the court committed error in the admission of a certified copy of a judgment showing the conviction of the defendant of murder committed in the state of Iowa on March 30, 1917. The district attorney asked the defendant if it were not true that he was convicted at Spencer, Iowa, of murder in the first degree in 1917 or 1918. The attorney for the defendant objected to the question and assigned it as misconduct. The court then informed the district attorney that he would permit him to ask if he had

been convicted of a felony. The district attorney reframed his question and asked the defendant if it was not a fact that on or about the thirtieth day of March, 1917, in Clay County, Iowa, he was convicted of a felony and the defendant replied in the affirmative. The district attorney at the close of the examination of the witness offered a judgment of conviction had against the defendant in the district court of Clay County, Iowa, on March 30, 1917, of murder of the first degree. This was objected to but the objection was overruled. The usual manner of making proof of a prior conviction is to ask the witness who has suffered such a conviction if he has been theretofore convicted of a felony, and if he denies that he has been so convicted, to produce a copy of the judgment of conviction; or if he answers in the affirmative he may then be asked of what specific crime he was convicted. (*People* v. *Chin Hane,* 108 Cal. 597 [41 Pac. 697]; *People* v. *Eldridge,* 147 Cal. 782, 786 [82 Pac. 442]; *People* v. *Fouts,* 61 Cal. App. 242, 245 [214 Pac. 657].) In this case the judgment of conviction was offered rather than eliciting the same information from the defendant who had suffered a former conviction. We are not able to see that defendant could have possibly suffered injury by this ruling.

[6] Lastly, it is claimed that the court erred in giving an instruction which has been held by a long line of authorities not to be error. The instruction complained of is an amplification of section 190 of the Penal Code, which provides that the jury may, within their discretion, in case they find a defendant guilty of murder of the first degree, pronounce a sentence that will relieve him of the extreme penalty of the law—to which has been added with judicial sanction—that such discretion is not an arbitrary discretion but is limited to a determination of which of two punishments shall be inflicted and is to be employed only when the jury is satisfied that the lighter penalty should be imposed. The precise instruction, without repeating it, has been so often passed upon by this court within the past two years that it is only necessary to cite the authorities which hold that the giving of the instruction does not necessitate a reversal of the judgment. (*People* v. *Casade,* 194 Cal. 679 [230 Pac. 9]; *People* v. *Wolfgang,* 192 Cal. 754 [221 Pac.

907]; *People* v. *Connelly*, 195 Cal. 584 [234 Pac. 374]; *People* v. *Perry*, 195 Cal. 623 [234 Pac. 890].)

The order and judgment appealed from are affirmed.

Richards, J., Shenk, J., Lawlor, J., Waste, J., Lennon, J., and Myers C. J. concurred.

Rehearing denied.

All the Justices concurred.