[Crim. No. 4060.   First Dist., Div. One.   Apr. 25, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. RICHARD GUS KLAVON, Defendant and Appellant.

766

Theodore Schweiter, under appointment of the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, Albert W. Harris, Jr., and John L. Burton, Deputy Attorneys General, for Plaintiff and Respondent.

SULLIVAN, J.—Appellant Richard Gus Klavon, Everett Frank Hamm and Manuel Joseph Corpio Perez were jointly charged in an information with burglary. In the second count Hamm, alone, was charged with the unlawful possession of marijuana in violation of section 11530 of the Health and Safety Code. On the burglary count, a jury found Klavon guilty but found Hamm and Perez not guilty. Hamm was found guilty on the second count. The record discloses no proceedings for a new trial. Klavon alone has appealed from the judgment of conviction.

The sole contention on appeal made by appellant through court appointed counsel is that the prosecutor committed prejudicial misconduct at the trial. Appellant does not question the sufficiency of the evidence to support the judgment.

Late in the evening of March 25, 1961, Klavon, after getting off work, met Hamm at the latter's house in Hayward. According to appellant, he and Hamm "decided to get a couple of beers," went riding around in Klavon's car and finally reached Russell City. According to Hamm's testimony, they went to Russell City to "score," jargon for making a purchase of narcotics. At Russell City, while sitting in Klavon's car, they met Perez, who was known to Hamm but not to Klavon. Perez told them that he knew someone in Pleasanton who had marijuana. The three men in Perez' car drove to Pleasanton

and went to the apartment of one Jack Scott. They had beer in the car which they drank before they started and during the trip.

Perez and Klavon left Hamm in the car and went to the doorway of Scott's apartment. The door was partially open and there were lights on inside. Perez called out Scott's name and receiving no answer, the two men pushed the door open and entered the apartment. Klavon then went back to the car and returned with Hamm. According to Klavon, Perez stated '' 'I wonder if it's here?' '' and Perez and Hamm thereupon started searching through drawers in the kitchen. Appellant then left the room and, when he returned, Hamm had apparently gone to the car. He testified that he then returned to the car, without taking anything from the apartment and without seeing either of the others do so. According to Hamm, however, appellant returned with a radio and ''an armful of stuff'' and put them in Perez' car.

The three men then drove off but because of Perez' erratic driving were stopped by the Pleasanton police who found in the car two portable radios, groceries, an electric iron, a camera flashbulb attachment, a butcher knife and an alarm clock. One of the radios and all of the other articles were identified by Scott as the articles taken from his apartment. He also stated that he had not given any of the three men permission to enter the apartment.

Appellant cites a number of instances which he claims constitute misconduct of the prosecutor and which he presents to us in two categories: (1) Those showing ''Abuse of Trial Mechanics''; and (2) those showing ''Systematic Distortion of Purpose of Evidence.'' In each category, appellant groups a number of instances, furnishes bare references to the record and adds parenthetical remarks pertinent thereto.[1]

We take up those instances charged in the first category. At the very beginning of the cross-examination of Klavon by the prosecutor, appellant's counsel who is not his counsel on this appeal, objected after the third question that the prosecutor was asking the questions too fast. There was no ruling by the court and no repetition of the matter in the portion of the transcript referred to. We find no error or misconduct in the incident. ▬ We are referred to a portion of the cross-examination of Perez by the prosecutor, during which counsel

---

[1]For example, the first paragraph under ground ''A'' reads: ''Record, 93-94, 134, 214-15. (Cavalier treatment of concern for comprehensibility in proceedings.)''

for appellant objected to what appears to us to be a slight re-phrasing of Perez' answers. However, the court sustained these objections and admonished the jury to keep in mind the distinction between what the prosecutor said and what the witness Perez had said. This incident to us seems trivial but if there was any resultant impropriety, it was certainly corrected by the court's action.

We have carefully examined all other portions of the record to which appellant refers us in support of his claim that there was an "abuse of trial mechanics" constituting misconduct and find that appellant made no objections to any conduct of the prosecutor embraced therein. ■ It is well settled that where no objection, exception or assignment of error is made in the trial court, the claim of misconduct of the district attorney cannot be raised for the first time on appeal. (*People* v. *Wein* (1958) 50 Cal.2d 383, 396 [326 P.2d 457]; *People* v. *Hampton* (1956) 47 Cal.2d 239, 241 [302 P.2d 300]; *People* v. *Byrd* (1954) 42 Cal.2d 200, 208 [266 P.2d 505]; *People* v. *Codina* (1947) 30 Cal.2d 356, 362 [181 P.2d 881].)

We next consider the second category, denominated, as we have pointed out above, "systematic distortion of purpose of evidence." This consists of two groups of acts of alleged misconduct, which we take up separately.

In the first group, appellant cites ten instances of alleged misconduct of the district attorney during his cross-examination of Klavon (not counting one instance where appellant's objection was sustained) and two instances during the cross-examination of Perez. The major claim of misconduct under-lying all these is that appellant, although on trial for burglary, was prejudiced in the eyes of the jury by a continuous cross-examination by the prosecutor on matters relating to narcotics, thus creating the impression that he was a man involved in the dope traffic. Augmenting this prejudicial misconduct, and as an integral part of it, so appellant argues, was the repetitious use in the interrogation of the word "score."

In those parts of the record relied upon by appellant as supporting this charge we find a motion for mistrial and an objection each made with reference to a question of the prosecutor using the word "score." Appellant was asked, without objection, a number of questions by the prosecutor bearing upon the purpose of appellant's ride with Hamm to Russell City and whether it was to purchase narcotics. He was then asked, also without objection, a number of questions concerning the first meeting of the three men at Russell City.

He was next asked, without objection, what then happened and he responded that Hamm "asked him [Perez] if he knew where he could score." He was further asked, without objection, if he knew what the word "score" meant, and the following occurred: "Q. And at that time you knew—in fact, you knew in 1955 what the word 'score' meant, didn't you? . . . MR. HOOPER: Your Honor, Mr. Vukota is once again invading something that he knows he has no right to do. I'll object to the question and I'll ask at this time for a mistrial. THE COURT: Well, I don't know what Mr. Vukota is referring to in 1955. I wasn't with him then. Objection overruled. Motion denied. . . . THE WITNESS: Like I told you before, I had a good idea what it means, but it was none of my business. They were talking. I didn't interfere with them." There then followed a number of questions bearing upon the same general subject—the meeting of the three men at Russell City—in which the word "score" was used three times without any objection by appellant to any of the questions. The following then occurred: "Q. Well, where—what happened to the word 'score' now? Did you fellows completely forget about that? MR. HOOPER: Object to the question as being argumentative. THE COURT: Overruled. MR. HOOPER: The question was, 'What happened to the word "score,"' Your Honor. THE COURT: Yes. Well, I think he said, 'Did you fellows forget about it,' or 'Did you—was that subject discussed any further.' THE WITNESS: No, it wasn't. MR. VUKOTA: Q. Nothing else was said? A. No."

We find no error in the court's denial of the motion for a mistrial. Assuming that the motion effectively reserved the question of misconduct as a point on appeal, the motion does not in our view specify the misconduct or give the grounds upon which either the objection or the motion was made. Both seem to be directed at the reference in the question to the year 1955 rather than to the use of the word "score," particularly since it was used several times in preceding and subsequent questions without objection from appellant. Nevertheless, we find no prejudicial misconduct in the incident. As to the second objection made, as set forth by us above, it is obvious that it only goes to the form of the question, that it did not object to the use of the word "score," much less constitute an effective assignment of misconduct.

We have carefully examined all of the other portions of the record cited by appellant in connection with the above ten instances of alleged misconduct and find that no objection

was made or exception taken by appellant to any of the questions included therein or to any conduct of the district attorney involved in such interrogation. Appellant cannot raise the question of misconduct for the first time on appeal. (See *People* v. *Wein*; *People* v. *Hampton*; *People* v. *Byrd*; *People* v. *Codina*; all cited above.)

The two instances of alleged misconduct during the cross-examination of the defendant Perez in reality comprise one incident. Perez testified to certain statements made to him by the defendant Hamm in reference to the purchase of narcotics. ■■■ The prosecutor in a following question used the term ''they'' in reference to such statements, thus implying that both Hamm and Klavon had made the statements, when, according to Perez' testimony, such statements were made only by Hamm. Counsel for Klavon then objected ''to the question as assuming something not in evidence, concerning 'they,'—the testimony was that Mr. Hamm said, 'A half a pound,' . . . .'' The court sustained the objection and when the term ''they'' was again used two questions later, suggested that the use of the term be avoided. The prosecutor refrained from using the term thereafter. If there was any error, it was certainly cured by the court's action. (*People* v. *Ramsey* (1959) 172 Cal.App.2d 266, 273 [342 P.2d 287].)

The second division of the charge based on ''systematic distortion of purpose of evidence'' relates to one instance of alleged misconduct based on a question asked Klavon as to whether on February 9, 1955, he was convicted of importing heroin, for which he received a two-year term. Klavon answered affirmatively. His counsel objected on the ground that it was not shown that it was a conviction of a felony and that he ''would make a motion at this time that in the event that it is not, I would ask for a mistrial.'' The court thereupon advised the jury that impeachment could be made on the basis of conviction of a felony and that such was permissible not to show bad character but to enable the jury to pass upon the weight of the witness' testimony. Appellant argues that the above constituted ''surprise'' impeachment. However, appellant's position appears to be not that the impeachment was error in itself but that it fitted into the general pattern of the prosecutor's misconduct.

■■■ A defendant who testifies in his own behalf may be asked whether he has been convicted of a felony and what specific felony it was. (*People* v. *David* (1939) 12 Cal.2d 639, 646 [86 P.2d 811]; *People* v. *Craig* (1925) 196 Cal. 19, 28

[235 P. 721] ; Code Civ. Proc., §§ 2051, 2065.) There is no requirement that the conviction used as the basis of impeachment be charged as a prior conviction in the information. The offense of importing a narcotic may be either a felony or a misdemeanor. (Health & Saf. Code, § 11500, as in effect September 7, 1955, and until its amendment in 1959 ; Health & Saf. Code, §§ 11712, 11713 until their repeal in 1959 ; Pen. Code, § 17.) Since appellant admitted he served a two-year term, it is obvious that he was convicted of a felony, and the question was proper.

The judgment is affirmed.

Bray, P. J., and Tobriner, J., concurred.