Opinion
DOWDS, J.
Appellant, a physician, was tried and convicted in a jury trial of 23 counts of violating section 11154 of the Health and Safety Code by prescribing controlled substances not in the regular practice of his profession and for persons not under treatment for a pathology or condition other than addiction. He appeals the judgment, assigning three grounds of error: (1) insufficiency of evidence to support his conviction; (2) error in the discharge of a juror without good cause; and (3) error in imposing a 15-day jail sentence as a condition of probation.
*Supp.4 I
Appellant contends there was insufficient evidence to support his conviction because the state failed to show he did not act in good faith in the prescribing of controlled substances. Assuming that lack of good faith is an element of the offense, (cf. People v. Fong (1954) 129 Cal.App.2d 667, 668 [277 P.2d 859]), the evidence amply established each of the violations of which defendant was convicted. Viewing the evidence, as we must, in the light most favorable to the People, it established that in each instance defendant prescribed medications (stipulated to be controlled substances) to an undercover investigator who related no physical complaint and gave no medical history and without any substantial physical examination.
II
During trial, the court became aware that a juror, Ms. Rashoff, had acted a few times as an interpreter at the county jail for the defense’s expert witness, Dr. Trockman. Upon inquiry by the court she stated that she considered Dr. Trockman to be an expert in his field but that her relationship with him would not affect her impartiality, nor would it cause her to give undue weight to Dr. Trockman’s testimony.[1] The court discharged her on grounds her confidential relationship with the witness would create an impropriety were she to continue as a juror and she was replaced by an alternate who had been present throughout the trial.
Penal Code section 1089 authorizes the court to discharge a juror and substitute an alternate juror in his or her place if “at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty,...” Appellant and respondent have each cited to us cases involving the question of what constitutes “good cause” under this statute. From a factual standpoint, the closest is People v. Abbott (1956) 47 Cal.2d 362 [303 P.2d 730] in which a juror was discharged when the court discovered in the course of the trial that the juror worked in the same office as the defendant’s brother and used a desk 25 feet away from the brother. No error was found, the Su *Supp.5 preme Court stating at pages 371-372: “The trial court did not abuse its discretion in determining that there was good cause for discharging Rettig. That determination, therefore, cannot now be disturbed. (In re Devlin, 139 Cal.App.2d 810, 813 [294 P.2d 466]; cf. People v. Daugherty, 40 Cal.2d 876, 889-890 [256 P.2d 911]; People v. Craig, 196 Cal. 19, 25 [235 P. 721].) Moreover, there is no showing that Abbott was prejudiced. He was not entitled to be tried by a jury composed of any particular individuals: (People v. Howard, 211 Cal. 322, 324-325 [295 P. 333, 71 A.L.R. 1385].) The juror who was substituted for Rettig was examined fully by both sides on voir dire, accepted as a qualified alternate and served as such from the start of the trial until seated as a regular juror. There is no claim he was unable to render a fair verdict.” Appellant contends, however, that the authority of Abbott and Howard has been eroded by People v. Hamilton (1963) 60 Cal.2d 105 [32 Cal.Rptr. 4, 383 P.2d 412] in which the Supreme Court commented that these earlier cases “turned upon the fact that no prejudice had been shown.” It went on to say that the most that could be said about such cases is that “they hold that in those cases the error was not shown to be prejudicial.” In the Hamilton case, a juror was discharged because she had read the Penal Code in the course of the trial, even though she averred she would be governed by the court’s instructions as to the law and would not substitute the understanding reached by her reading of the law. The substitution occurred during the penalty phase of a murder trial after the juror had indicated her opposition to a verdict imposing the deáth penalty. The court found reversible error, stating: “[In the Abbott and Howard cases t]here was no showing that the juror would have been more favorable to one side or the other.
“The instant case presents an entirely different situation. Here, the prosecution moved for the substitution of the alternate for Mrs. McCullough on the stated ground that she ‘had disclosed her opposition to a verdict imposing the death penalty.’ Thus, her disqualification could only be beneficial to the prosecution and prejudicial to the defense. While it has been said repeatedly, in the cases cited above, that a defendant is not entitled to be tried by a jury composed of any particular individuals, but only by a jury composed of qualified and impartial jurors, this does not mean that either side is entitled to have removed from the panel any qualified and acting juror who, by some act or remark made during the trial, has given the impression that he favors one side or the other. It is obvious that it would be error to discharge a juror for such a reason, and that, if the record shows (as it does here), that, based on the evidence, that juror was inclined toward one side, the *Supp.6 error in removing such a juror would be prejudicial to that side. If it were not, the court could ‘load’ the jury one way or the other. That is precisely what occurred here. The juror asked, in good faith and in order to be instructed by the court, questions which indicated that (temporarily at least) she was considering the probability of a life sentence. To dismiss her without proper, or any, cause was tantamount to ‘loading’ the jury with those who might favor the death penalty. Such, obviously, was prejudicial to appellant.
“This error alone could well be held to have been prejudicial and to require a retrial of the penalty issue. Certainly, when considered with the other errors about to be discussed the cumulative effect of such errors must be held to be prejudicial.” (60 Cal.2d at pp. 127-128.)
We do not believe that Hamilton undercuts Abbott in its application to the instant case. In the present case there is no indication that Ms. Rashoff had formed any impression of the evidence favoring either side or that the alternate substituted for her, who had been accepted as an alternate by both sides, would be inclined to a verdict for the People or for appellant. There was no error in the substitution of the juror, certainly none that was prejudicial.
III
Appellant’s third contention is that the trial court erred in imposing a jail sentence as a condition of probation. A trial court has broad discretion to prescribe the conditions of probation, but they must serve a purpose specified in Penal Code section 1203.1.[2] (People v. Richards (1976) 17 Cal.3d 614, 619 [131 Cal.Rptr. 537, 552 P.2d 97].) A condition of probation will not be held invalid unless it meets each of the following criteria in that it, “‘(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality....’” (People v. Lent (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545]; accord: People v. Knox (1979) 95 Cal.App.3d 420, 427 [157 Cal.Rptr. 238].)
*Supp.7 Appellant’s citation of comments by the trial judge that he might be considering, among other criteria for conditions of probation, the deterrent effect jail time might have on others tempted to commit similar crimes, does not convince us that there was anything improper in imposing 15 days of jail time as a condition of probation.
Deterrence from crime of the offender and other prospective offenders is a well recognized objective of legally adjudicated punishment. See People v. Gardner (1976) 56 Cal.App.3d 91, 98 [128 Cal.Rptr. 101]: “As a general proposition, [punishment] does deter, both by preventing one who is aware of a preordained punishment from doing the act which brings it upon him and also by making an example of the offender for the sake of others.” (See also People v. Friend (1957) 47 Cal.2d 749, fn. 8 at p. 766 [306 P.2d 463], overruled on other grounds in People v. Love (1961) 56 Cal.2d 720, 731 [16 Cal.Rptr.777, 17 Cal.Rptr. 481, 366 P.2d 33, 809].) While not directly applicable to conditions of probation imposed by a municipal court, rule 410(d) of the California Rules of Court states that the general objective of sentencing includes deterring others from criminal conduct by demonstrating its consequences. Further, taking into consideration the maximum incarceration to which appellant was subject if probation were denied, we cannot see how he has in any manner been prejudiced.
The judgment is affirmed.
Cole, P. J., and Saeta, J., concurred.
A petition for a rehearing was denied December 27, 1979.

 The resolution of the conflict between the conflicting testimony of Dr. Trockman and that of the People’s expert as to what constituted a minimum physical examination was a crucial issue in the case.

 Under that statute the court may, as conditions of probation, impose fine or imprisonment or both “and other reasonable conditions, as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of the law, for any injury done to any person resulting from such breach and generally and specifically for the reformation and rehabilitation of the probationer,...”