[Crim. No. 1204.  In Bank.—September 25, 1905.]

## THE PEOPLE, Respondent, v. HARRY ELDRIDGE, Appellant.

CRIMINAL LAW — MURDER — UNLAWFUL CONSPIRACY TO ESCAPE FROM PRISON—CIRCUMSTANTIAL EVIDENCE.—Upon the trial of a defendant charged as party to a murder committed by one of several prisoners who were engaged in an unlawful conspiracy to escape from prison, it is not necessary to prove by direct evidence an express agreement entered into by the murderer and the defendant, to establish that each was a party to the conspiracy, but it may be proved by circumstantial as well as direct evidence. *Held,* that the evidence is sufficient to establish that the murderer, as well as the defendant, was a party to the conspiracy, and that the murder was committed in pursuance of it.

ID.—IMPEACHMENT OF WITNESS—CONVICTION OF FELONIES—CROSS-EXAMINATION.—The district attorney may ask a witness on cross-examination whether he has been convicted of a felony, and, if he admits it, may inquire as to the name of the particular felony; and may thus show that the same witness has been convicted of more than one felony.

ID.—INSTRUCTIONS—REFUSAL OF REQUEST.—The court was not bound to give all the instructions requested by the defendant, and it is sufficient that the refused instructions were embraced in the charge given by the court.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. E. E. Gaddis, Judge presiding.

The facts are stated in the opinion of the court.

Thomas H. Christiansen, and C. H. S. Bidwell, for Appellant.

U. S. Webb, Attorney-General, and J. C. Daly, Deputy Attorney-General, for Respondent.

LORIGAN, J.—During an outbreak which occurred on July 27, 1903, among a number of the convicts in the state prison at Folsom, inaugurated with a view of effecting their escape, and in which the defendant participated, W. L. Cotter, one of the prison guards, was stabbed and killed by a

convict named Andy Myers. Some of the convicts engaged
in the outbreak succeeded in escaping from prison, the de-
fendant among them. A year subsequently he was recap-
tured at Seattle, Washington, brought back to this state,
tried for the murder of Cotter, convicted, and sentenced to
be hanged. He appeals from the judgment and from the
order denying his motion for a new trial.

The theory upon which defendant was convicted was, that
the killing of Cotter was committed by Myers in consumma-
tion of an unlawful conspiracy to escape from prison, to ·
which conspiracy Myers, in common with defendant and the
other convicts engaged in the outbreak was a party.

There is no question made in the case but that a conspiracy
was entered into among the convicts to escape from prison,
and that the defendant was a party to it; that he partici-
pated in the outbreak made as a result of such conspiracy,
and that in the general assault which was made upon the
prison officials at that time, the guard Cotter was killed by
Myers.

It is, however, insisted by appellant that there was not
sufficient evidence produced before the jury to show that .
Myers was a party to the conspiracy, or was conversant with
its object or purpose, the claim of appellant's counsel being
(to state his position as he assumes it) that there was noth-
ing in the evidence to show but that Myers "was acting inde-
pendently, taking advantage of the melee to vent a grudge
on Mr. Chalmers or Mr. Cotter, and that Mr. Cotter received
a death wound at that time."

While it is true, as contended by counsel for appellant,
that there was no direct evidence of any express agreement
entered into by Myers to join with the defendant and the
others in their unlawful scheme to escape, still it was not
essential that there should be evidence produced before the
jury of such express agreement, in order to establish the fact
that he was a party to the conspiracy. It is competent to
prove that one was a party to a conspiracy for the commis-
sion of crime by circumstantial as well as by direct evidence.
That a conspiracy to commit crime was explicitly or formally
agreed to is rarely capable of being proved by direct evi-
dence, and must be developed from such circumstances as
reasonably tend to prove its existence. As these criminal

combinations are uniformly entered into in secret, and hence are rarely susceptible of direct proof, the law, on account of the necessity of the case, has deemed it wise and proper that circumstantial evidence of their existence should be permitted.

As was said by this court in *People* v. *Donnolly*, 143 Cal. 398, [77 Pac. 179]: "The ultimate fact here, of course, was the conspiracy on the part of the defendant with the other parties named in the commission of the crime, but it is not necessary in order to establish that fact to prove that the parties met and actually agreed to jointly undertake such criminal action. From the secrecy with which unlawful undertakings are adopted it would be generally impossible to make such proof by direct testimony. Evidence is indirect as well as direct,—consisting of inferences and presumptions,—and it is code law that upon the trial of a case evidence may be given of any facts from which the facts in issue are presumed, or are logically inferable; and the jury, by the exercise of their judgment or reason, warranted by a consideration of the usual propensities or passions of men, may make such deductions or draw such inferences from the facts proven as will establish the ultimate facts or facts in issue."

Having in mind these principles of law, we find that the evidence in the case established—aside from the fact, of which there can be no question, that a conspiracy to escape from the prison existed between the defendant and other convicts who participated in the outbreak—that on the morning of July 27, 1903, while the convicts were proceeding on their way to prison work, issuing in line from one of the small wicket gates of the prison for that purpose, and being counted by the gatekeeper, Chalmers, as they passed, a sudden rush from the line was made by defendant, Myers, and some ten or twelve others. Nearly all of them were armed with either knives or razors. A number of them, including defendant, immediately made for the office of the captain of the guard, and the prison officials found therein were, after a struggle, made prisoners; other convicts speedily assailed the guards outside the prison and overpowered them. In making these assaults and overcoming the resistance of the officials, the convicts used the weapons with which they were

armed, inflicting severe injuries · upon several of them. Myers rushed from the line with the others, and with drawn knife, assisted by another convict, named Leverone, who accompanied him, assailed the prison gatekeeper, Chalmers. In the struggle that ensued, the guard Cotter started to the assistance of Chalmers and was stabbed and killed by Myers.

It is unnecessary to detail what took place subsequent to the killing of Cotter,—the procurement of arms from the prison armory by the convicts and their escape from the prison, taking with them the officials they had overpowered, as a protection against being fired on by the other guards,— as Myers does not seem to have participated in these subsequent proceedings, and neither he nor Leverone escaped.

It is quite apparent from the evidence to which we have referred, and we are satisfied that the jury were warranted in finding, that the outbreak was the result of a carefully considered plan, in which evidently the details of the work necessary to be accomplished in order to secure escape were agreed on, and that the particular part Myers and Leverone were to take in it, as well as the particular parts that the other convicts in groups were to take, was prearranged. The rush was made from the line by all the convicts engaged in the outbreak at the same moment. There was no hesitancy or confusion accompanying it. As they rushed out they quickly formed into groups, the members of each group immediately proceeding to the particular task which had been assigned to them, and the office, the guards, and the gatekeeper were simultaneously assailed. In order to secure the success of their attempt to escape, it was necessary, in any scheme which was devised for that purpose, that provision should be made for overpowering the gatekeeper as well as the other officials. He was not attacked by any other of the convicts except Myers and Leverone,—the first, principal, and more persistent assault being made by the former,—and if it were not part of the conspiracy that these particular convicts should attack him, an important detail of the scheme for escape was evidently overlooked, an omission which, from the otherwise apparent completeness of its details and the prompt and concerted manner in which they were executed, cannot be reasonably supposed. The assault of Myers upon both

CXLVII. Cal.—51

the gatekeeper Chalmers and the guard Cotter was obviously made in furtherance of the success of the conspiracy which certainly existed among all the other convicts engaged in the outbreak, and it was only a logical and reasonable inference for the jury to make from all the evidence in the case that Myers himself was one of the conspirators. All the evidence warranted the jury in drawing that inference, while there is not a particle of evidence in the case that Myers entertained any grudge or animosity against either Chalmers or Cotter for any reason, either imaginary or real.

This is the only point made in the case upon the sufficiency of the evidence to sustain the verdict.

It is insisted that the court erred in the admission of certain evidence over the objection of appellant. This is predicated on the fact that the court permitted the prosecution on cross-examination of many of the witnesses of appellant—principally prisoners under sentence at the state prison when the outbreak occurred—to inquire of them after each had answered that he had been convicted of a felony as to what the felony was. In the case of *People* v. *Chin Hane,* 108 Cal. 607, [41 Pac. 700], this court sanctioned such an inquiry in the following language: "In order to impeach the credibility of a witness, including a defendant when he testifies, the witness may be asked if he has ever been convicted of a felony. The details and circumstances comprising the offense should not be gone into. But, in view of the statute, section 2051 of the Code of Civil Procedure, which allows the proof of the fact to be made either by the evidence of the witness himself or by the record of conviction, it would appear that not only the fact of the conviction could be shown, but the name of the particular felony of which the witness had been convicted." The Hane case was cited approvingly on the same point in *People* v. *Putnam,* 129 Cal. 258, [61 Pac. 961]. It is claimed, however, by appellant, that it does not appear from the opinion of the court in the Hane case that this point was before the court on that appeal, and hence the rule announced there, that such an inquiry was proper, was *obiter dictum.* While it is true that the opinion in the Hane case does not specifically state that any point was made on appeal to which the rule announced was pertinent, yet, from the record on appeal and the briefs of counsel on file in this court in that

case, which we have examined, it appears that the point was in fact presented for determination, and was undoubtedly intended to be and was disposed of by the rule announced with reference to it. But if it be conceded that the opinion of the court on this point in the Hane case was but *obiter,* we are satisfied that, to the extent which we have quoted its language, it correctly states the rule upon the subject, and that it was proper for the lower court in the present case to have permitted the inquiry which is complained of. But it is further complained in the same connection that the court erroneously permitted the prosecution to show that some of the witnesses had been convicted twice of felony. We perceive no valid objection to allowing such proof. None is suggested by counsel for the appellant. Section 2051 of the Code of Civil Procedure, which permits proof of the fact that a witness has been convicted of a felony to be given for the purpose of impeaching him, places no limitation upon the number of felonies of which it may be shown he has been convicted, and considering the purpose of allowing the proof at all, it is obvious that no such limitation could have been intended.

It is claimed that the court erred in refusing to give certain instructions asked by defendant and numbered 41, 47, and 55 in the transcript. We do not set them forth, because their consideration does not involve any proposition of law. The instructions tendered dealt with the question of Myers's connection with the conspiracy, and the duty of the jury, should they find he was not so connected, or entertain any reasonable doubt on the subject, to acquit the defendant. This proposition was presented in a large number of separate instructions tendered by the defendant varying from each other only in phraseology. Defendant's instructions numbered 27, 29, 33, 34, 35, 36, 43, and 45, which were given by the court, were full and complete on this subject. They presented the same proposition of law which was embraced in the instructions which were refused, and this is all to which the defendant was entitled. A court is not required to give all the instructions asned by a party; it is sufficient if the instructions which are given clearly embrace the same proposition for the guidance of the jury which the refused instructions contained.

There are some other errors assigned, principally relative to the admission of evidence over the objection of defendant. All of these appear to be without substantial merit, and on that account we make no particular reference to them.

The judgment and order appealed from are affirmed.

McFarland, J., Shaw, J., Van Dyke, J., Angellotti, J., Henshaw, J., and Beatty, C. J., concurred.