STATE ex Rel. GOINGS, Appellant, v. CITY OF GREAT FALLS et al., Respondents.

(No. 8,164.)

(Submitted April 8, 1941. Decided April 29, 1941.)

[112 Pac. (2d) 1071.]

*Messrs. Speer & Hoffman,* for Appellant, submitted a brief; *Mr. Charles B. Sande,* of Counsel, argued the cause orally.

*Mr. Paul J. Murphy,* for Respondents, submitted a brief, and argued the cause orally.

MR. JUSTICE ERICKSON delivered the opinion of the court.

This action is one in mandamus in which the relator seeks a writ commanding the city council of Great Falls to put him on the reserve list of police officers of that city. From the judgment of the district court for Cascade county quashing the alternative writ and dismissing the application upon which the writ was issued, this appeal is brought.

The record shows that the relator was a policeman in the city of Great Falls, and that on the first day of April, 1940, he held the rank of sergeant of police; that he filed an application for transfer to the police reserves of the city, and that on the 25th day of March, 1940, the police commission submitted a report to the city council in which it found, after hearing testimony, that the relator "is permanently disabled by reason of a nervous and mental disability of such a character as to impair his ability as an active police officer, and to incapacitate him for further discharge of his duties. We find that the disability referred to was undoubtedly incurred in the line of duty as a police officer of the city of Great Falls, Montana, and recommend to the City Council and the Board of Trustees of the Police Pension Fund and Arthur Goings shall pass from the active list of police officers and become a member of the Police Reserves of Great Falls, Montana."

After the hearing before the police commission, which was held on March 20, the trustees of the police pension fund on March 25 met and considered the matter and drew up a report to the city council which recited that the meeting was held pursuant to section 5108.13, Revised Codes, and "in obedience to the involuntary mandate of" what is now Chapter 78, Laws of 1937, and that pursuant to the "communication" of the police commission, they found that relator was disabled, etc., in line of duty and recommended that he be placed on the reserve list.

The police committee of the city council made its report in which it recited: ''Inasmuch as the Council has been advised by both the City Attorney and our Mayor that we have no discretion in the matter and that Mr. Goings must be placed upon the Reserve List of Policemen and draw a pension, we feel that the matter is not properly before this body for its consideration and therefore recommend that no action be taken. The Council feels that no pension should be granted however, and in so far as we may have power to act we deny the request for a pension.''

The determination of this matter rests in the effect of certain provisions of Chapter 390, Revised Codes, 1935, sections 5095 et seq., and, subsequent amendments, dealing with police departments, and particularly with the power of the police commission and the effect of its determination of the fact question that a policeman has been injured or incapacitated while on duty and in line of duty to such an extent that his ability to act as a police officer is permanently impaired and that therefore he should be placed on the reserve list of policemen. Section 5108.2, which was enacted in 1927 and amended in 1929, provides that whenever any member of the police department shall have served twenty-five years or shall have reached sixty-five years of age ''he may with the consent of the city council, pass from the active list * * * and become a member of the police reserves.'' Section 5108.4, enacted as a part of the same Chapter of the 1927 Session Laws, as section 5108.2 and amended by the same Chapter of the Session Laws of 1929, provides that when a policeman receives injuries or disabilities while on duty, etc., and in the line of duty, which injuries shall ''in the opinion of the board of police commissioners or city council of the city or town * * * impair his ability * * * he shall become a member of the police reserves of such city or town in like manner as though he had arrived at the age of transfer to the reserve list of such department.''

It will be noted then as the law stood at the time of this later enactment whether or not a policeman should be transferred to the reserve list, even though he had served the specified length

of time or had reached the age of sixty-five, was left entirely to the city council. In a case where transfer was sought by reason of permanent disability, two steps then were necessary; first, a finding of the disability, and second, a transfer to the reserve list by the city council, the latter apparently not being mandatory even though there was a finding of disability.

Chapter 78 of the Laws of 1937, which the pension fund trustees referred to as the involuntary mandate of the legislature, specifically amended section 5108.2, and it provides that when a policeman has served twenty years *"he may at his option* * * * become a member of the police reserves * * * and if he reaches the age of sixty-five (65) * * * he *shall* pass * * * and become a member of the police reserves."* This amendment makes unnecessary the second step required before that time, i. e., once it is determined that the policeman is sixty-five, the city council has no power nor discretion but it must transfer him to the reserve list.

While Chapter 78 of the Laws of 1937 was enacted some years after section 5108.4, which provides that once the fact of disability is found the policeman is in the same situation as though he had reached the age of transfer, it is not questioned that Chapter 78 applies, and that the only question necessary for determination here is as to who has the power to make the finding of fact that the relator was disabled within section 5108.4. It is conceded that once that finding of fact is made by the correct tribunal, the city has no discretion and the relator's name must be placed on the reserve list.

A determination of this question hinges on the ▮▮▮▮▮ [1] tion to be placed on that portion of section 5108.4 which provides that whenever a policeman becomes disabled in line of duty and the injuries are such as *in the opinion of the board of police commissioners or city council* shall impair his ability to act as a police officer, he shall be transferred to the reserve list. It is the contention of relator that the board of police commissioners in cities having a police commission as does Great Falls, is the fact finding body, and once its finding is made it is binding on the city council. On the other hand, the city

maintains that the police commission, where one exists, has the power only to make recommendations, and that the city is not bound by such a recommendation.

As one of its reasons for taking the view it does, the city points to the provisions of section 5108.13, which was enacted in 1929 and which provides that the pension fund trustees must, before a member of the police force is placed on the reserve list by the city council, report in writing their recommendations as to whether or not such member shall be placed on the reserve list. This provision is not, if respondents' view of its effect is correct, compatible with Chapter 78, Laws of 1937, and what we say as to section 5108.4, applies to this section. It was enacted while the city council could deny an applicant's application for transfer to the reserve list even though he had the necessary qualifications. To hold that this section shows, in spite of the fact that it was enacted prior to Chapter 78, that the council has the power to refuse relator's request even though he qualified under Chapter 78 for transfer to the reserve list, would make Chapter 78 meaningless and ineffective.

A study of the statutes convinces us that the relator's view ▮ is the correct one. There are two reasons for that conclusion. The first is the use of the disjunctive "or" in that portion of section 5108.4, Revised Codes, under consideration. The city argues that the word "or" should be considered as conjunctive so that the provisions of the statute would mean that first there should be the hearing before the police commissioners, and then a hearing before the city council, with both bodies having the power to determine the facts, or that the city council could pass on it without any action on the part of the commissioners. In the first place this is not the ordinary interpretation to be given to the word "or." Its ordinary use is in the disjunctive and unless the purpose of the statute and the intention of the legislature are clearly otherwise, the courts ordinarily interpret the use of the word "or" as having been used in the disjunctive.

The second reason that impels this conclusion is the fact situation that not all cities and towns have police commissions,

but rather that at the time the Act was passed only cities of the first class were compelled to have police commissions, and now only cities of the first and second classes must, under the law, have such commissions. The obvious intention of the legislature was that where, under the law, police commissions existed, it was the function of the police commission to determine the fact; and that where there was no police commission that function rested in the city council. In addition to the plain wording of the statute, there are other statutes which indicate this result. In the first place, the obvious intention of the legislature in enacting the various sections relative to police departments and police commissioners was to remove the police, as much as possible, from the influence of party politics, i. e., to make their tenure secure so that it would not be necessary for police officers to consider the political effect of their various actions. By providing for staggered terms in the police commission, by providing for examination of candidates for police positions by the police commission, by providing for unlimited tenure and removal only upon filing of charges and hearing before the police commission, and by the broad general powers given the police commission, it is apparent that it is not a body of only advisory powers but that the intention of the legislature was to make it a body of considerable importance whose finding should have weight.

To hold that the finding on this fact question by the police commission constituted nothing more than a recommendation to the city council, in addition to contravening what appears to be the clear language of the statute, would to a large extent nullify the purpose of the legislature, which in effect has placed policemen on civil service and by so doing has attempted to remove them from the vagaries of the political winds.

Some objection is made by the city to the sufficiency of the petition for the writ. These objections are based upon two grounds, the first being that the petitioner has not alleged that he was in fact disabled, and, second, that he has not alleged that his disabilities occurred while on duty. The petition sets

58

out as exhibits and as part of it the various orders of the police commission, the trustees of the trust fund, and the order of the city council. While it is true that the findings of the police commission and of the trustees do not contain a direct statement that the injuries occurred while on duty, yet it seems clear that the result they reach, together with the express finding that the disabilities occurred in line of duty, carries with it the implication that the disabilities occurred while the relator was on duty, as well as in line of duty. These orders were the orders of a lay board, and, of course, do not have all the exactness and completeness that might appear in the orders of a court. However, under all of the rules of construction, it would seem that they are sufficient to show this finding, and since they are attached as exhibits they are a part of the petition and they are sufficient to meet this objection to the pleadings.

We find no merit in the other objection that the relator has failed to allege actual disability. The findings of these two boards as incorporated in the petition are adequate on this point. Nor is there merit in the argument that the petition fails to allege ability on the part of the city to pay the pension to relator provided for in the case of officers placed on the reserved list. The statute is mandatory so far as placing relator on the reserve list is concerned. So, too, must the city contribute to the pension fund by a levy of not to exceed one mill. Attached to relator's petition was the recommendation of the trustees of the pension fund, recommending not only that he be placed on the reserve list, but also that "he be paid * * * from the funds for the payment of salaries" of officers "upon the reserve list a sum equal to one-half" his salary. This action of the board was part of relator's pleading and it, together with the statutory provisions, is sufficient to show ability, if that is necessary, to pay on the part of the special fund.

The finding of the police commission being binding on the city council, it should have proceeded in accordance with the provisions of section 5106, Revised Codes, and by ordinance

placed relator on the reserve list, and ordered payment of the amount to him provided by the statute.

Judgment is reversed.

MR. CHIEF JUSTICE JOHNSON and ASSOCIATE JUSTICES ANGSTMAN, ANDERSON and MORRIS concur.