STATE, Respondent, *v.* COLOFF, Appellant.

No. 9008.

Submitted January 18, 1951. Decided April 10, 1951.

231 Pac. (2d) 343.

Mr. Edwin E. Multz, Mr. Clarence Hanley, Helena, Mr. W. M. Black, Shelby, for appellant.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Louis E. Poppler, Asst. Atty. Gen., Mr. John C. Hoyt, County Atty., Shelby, for respondent.

Mr. Black, Mr. Multz, Mr. Hanley, Mr. Hoyt and Mr. Poppler argued orally.

MR. JUSTICE FREEBOURN:

Defendant and appellant was convicted of committing lewd and lascivious acts upon a child under the age of sixteen years and appeals from such conviction.

Under cross-examination defendant, not charged with a prior conviction, was asked if he had ever been convicted of a felony. He answered, "Yes." Later, over objection, the prosecution was permitted to place in evidence and read to the jury the following document:

33

"United States of America v. "John Coloff (Indicted as John K. Coloff, alias Ivan Koleff,)

No. 7194, Criminal Indictment in three counts for violation of U. S. C. Title 11, Sec. 52b.

"Judgment and Commitment.

"On this 5th day of May, 1943, came the United States Attorney and the defendant, John Coloff, appearing in proper person and by his counsel, Mr. Leo C. Graybill.

"And the defendant having been convicted on the verdict of guilty of the offenses charged in the Indictment in the above entitled cause, to-wit: That on or about the 29th day of August, 1940, and continuously thereafter up to and including the date of the filing of the Indictment herein, near Geraldine, in the County of Chouteau, in the State and District of Montana, and within the jurisdiction of this court, while a bankrupt, the said defendant did unlawfully, knowingly, fraudulently, and feloniously conceal from the Trustee in bankruptcy in a bankruptcy proceeding theretofore instituted in this court by the said defendant, certain property belonging to the estate in bankruptcy of him, the said defendant, that is to say, the Southeast quarter of Section 15, in Township 23 North, of Range 13 East of the Montana Principal Meridian, in Chouteau County, Montana, consisting of 160 acres of land of the approximate value of $650.00, and the South Half of Section 22, in Township 23 North, of Range 13 East of the Montana Principal Meridian, in Chouteau County, Montana, consisting of 320 acres of land of the approximate value of $1243.00, as charged in count one of said Indictment; and (2) that on or about the 29th day of August, 1940, and continuously thereafter up to and including the date of the filing of the Indictment herein, at Great Falls, in the State and District of Montana, said defendant did unlawfully, knowingly, fraudulently and feloniously conceal from said trustee in said bankruptcy proceeding certain other prop-

erty belonging to his said bankrupt estate, to-wit, the sum of $260.06 in lawful money of the United States, as charged in count two of said Indictment, and (3) that on or about the 29th day of August, 1940, at Great Falls, in the County of Cascade, in the State and District of Montana, and within the jurisdiction of this court, before the Referee in Bankruptcy in said bankruptcy proceeding, the said defendant did unlawfully, wilfully, corruptly, fraudulently, knowingly, feloniously testify falsely and make a false oath in relation to his said bankruptcy proceeding, as charged in count three of said Indictment, all in violation of Title 11, Section 52b, U. S. C.

"And the defendant having been now asked whether he has anything to say why judgment should not be pronounced against him, and no sufficient cause to the contrary being shown or appearing to the court, It Is By The Court

"Ordered And Adjudged that the said defendant, John Coloff, having been found guilty of said offenses, be and he hereby is committed to the custody of the Attorney General of the United States or his authorized representative, for imprisonment for the term of Two (2) Years And Four (4) Months and pay a fine of Five Hundred ($500.00) Dollars; and that said defendant be further imprisoned until payment of said fine or until said defendant be otherwise discharged as provided by law.

"It is further ordered that the Clerk deliver a certified copy of this Judgment and Commitment to the United States Marshal or other qualified officer and that the same shall serve as the Commitment herein.

"/S/ Charles N. Pray, Judge."

R. C. M. 1947, sec. 93-1901-11, provides: "A witness may be impeached by the party against whom he was called, by contradictory evidence or by evidence that his general reputation for truth, honesty, or integrity is bad, but not by evidence of particular wrongful acts, except that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a felony."

R. C. M. 1947, sec. 94-4723, provides: "A person convicted

of any offense is notwithstanding a competent witness in any cause or proceeding, civil or criminal, but the conviction may be proved for the purpose of affecting the weight of his testimony, either by the record or by his examination as such witness.''

When the credibility of a witness is attacked under these ██ statutes it has long been the uniform trial practice in Montana to ask the witness, on cross-examination, in substance, ''Have you ever been convicted of a felony?'' If the answer is ''Yes,'' further examination along this line is foreclosed. If the answer is a denial, the conviction can then be shown by the record of the judgment.

This is sound practice and should be followed. The purpose of the statutes, weakening the credibility of the witness, is satisfied and chance for error is eliminated. It is the natural, practical and best way of handling the matter.

The meaning or construction given these statutes is presumed ██ to be the true one, even when the language has popularly a different meaning. 25 R. C. L., sec. 273, pp. 1042, 1043.

The practical construction given a statute for a long period ██ of time has been considered strong evidence of the meaning of the law. ''Indeed, the practical construction of a statute, or the meaning publicly given it by contemporary usage, is usually presumed to be the true one. It should not be disturbed, disregarded, or overturned, * * * except for cogent or convincing reasons * * *''. 50 Am. Jur., Statutes, sec. 319, pp. 309, 310, 311.

''The natural and, ordinarily, the easiest way to prove them [prior convictions], if true, is by the witness himself, but the party ought not to be deprived of his statutory right by the falsehood of the witness.'' Helwig v. Lascowski, 82 Mich. 619, 46 N. W. 1033, 1034, 10 L. R. A. 378. See also, Burdette v. Commonwealth, 93 Ky. 76, 18 S. W. 1011.

''The record of conviction may be introduced after the witness has denied having been convicted * * *''. 28 R. C. L., sec. 213, p. 627.

''The usual manner of making proof of a prior conviction

is to ask the witness who has suffered such a conviction if he had been theretofore convicted of a felony, and, if he denies that he has been so convicted, to produce a copy of the judgment of conviction * * *''. People v. Craig, 196 Cal. 19, 235 Pac. 721, 724.

A defendant in a criminal case, if he is sworn and testifies, is subject to the same rules of cross-examination and impeachment as any other witness. State v. Schnepel, 23 Mont. 523, 59 Pac. 927; State v. Crowe, 39 Mont. 174, 102 Pac. 579, 18 Ann. Cas. 643; and State v. O'Neill, 76 Mont. 526, 248 Pac. 215.

If the defendant does not take the stand, a prior conviction may not be shown to impeach him. State v. Jones, 51 Mont. 390, 153 Pac. 282.

The effect of showing a prior conviction, for the purpose of impeachment, is much different as between the defendant and a witness for the defendant, as said in State v. Hougensen, 91 Utah 351, 64 Pac. (2d) 229, 239, ''such questions as to a defendant may directly prejudice the jury in the case, whereas in case of a witness not a defendant they do no more than prejudice the jury against such witness and thus less directly affect the case.''

When defendant admitted his prior conviction, the purposes of the statutes were served. His credibility had been impeached and weakened. To go further and introduce the judgment showing such prior conviction could serve no good purpose.

''* * * what good ground can there be for demanding the record? To do so is to do more than has been done; but, if there is a negative answer, the record of conviction is an effective impeachment * * * the fact of that assault, and his conviction of it, was as well known to him and his confession of it as of as high quality and probative force as the record itself, and the reason for the rule requiring the record in this case we think entirely fails; and the admission by parol was as near the fact as the record could be. Rules of evidence are adopted for practical purposes.'' Dotterer v. State, 172 Ind. 357, 88 N. E. 689, 693, 30 L. R. A., N. S., 846.

A felony judgment in a district court of Montana does not set out the facts and circumstances of the crime charged. It goes no further than to name the offense.

The federal court judgment and commitment placed before the jury here showed defendant to have been convicted of three felonies and set out the facts and circumstances constituting each offense.

Details and circumstances comprising the prior offenses are not admissible. See: People v. Chin Hane, 108 Cal. 597, 41 Pac. 697; People v. Muchupoff, 79 Cal. App. 306, 249 Pac. 240; People v. David, 12 Cal. (2d) 639, 86 Pac. (2d) 811; and People v. Braun, 14 Cal. (2d) 1, 92 Pac. (2d) 402. See also: Wharton's Criminal Evidence, 11th Ed., Vol. 3, Witnesses, sec. 1374, p. 2261.

The only witness testifying to seeing defendant commit the acts charged was the prosecutrix. On the day and immediately after such crime is said to have been committed, the prosecutrix met sheriff Dunstall. He testified: "I asked her if she had been down to the Rex Hotel, and whether or not she had been molested. She stated that she had not. I asked her if Mr. Coloff had molested her in any way. She stated that he had given her a dollar to go to the Fair, that her mother was down at the Fair."

There was some corroborating evidence as to words spoken in the room where, and about the time, the criminal acts are said to have been committed.

Under the evidence the judgment of prior conviction weighed heavily against defendant. It may well have been the deciding factor which brought about his conviction. It was prejudicial error to admit it in evidence.

Appellant complains of the trial court's refusal to give several instructions offered by defendant. Two of these, respecting the withdrawal of the judgment of prior conviction from the consideration of the jury, should have been given. The other instructions were properly refused.

For the reasons stated the judgment is reversed. The case is remanded for a new trial.

MR. JUSTICE BOTTOMLY concurs.

MR. CHIEF JUSTICE ADAIR: (specially concurring).

At common law a person convicted in a court of record of any felony thereupon became disqualified from being a witness. This disqualification is removed in this jurisdiction by a statute providing that notwithstanding his conviction such person is a competent witness in any cause or proceeding, civil or criminal, "but the conviction may be proved for the purpose of affecting the weight of his testimony, *either* by the record *or* by his examination as such witness." (Emphasis supplied.) R. C. M. 1947, sec. 94-4723; State v. Stein, 60 Mont. 441, 446, 199 Pac. 278.

In this jurisdiction after a person who has suffered conviction of a felony has been sworn and given testimony in a case he may then be impeached by the party against whom he was called by showing "by the examination of the witness, *or* the record of the judgment, that he has been convicted of *a* felony." (Emphasis supplied.) R. C. M. 1947, sec. 93-1901-11.

The foregoing statutes are plain and unambiguous. They are readily understood. They speak for themselves. Their meaning is so clear as to defy construction. An unambiguous statute should not be interpreted,—it should be enforced. It is the duty of the court to take these statutes as it finds them and to apply the simply worded clearly stated law as it finds it. Here the simple word "or" means "or,"—not "and." The simple word "either" means "either,"—not "both." The word "a" means "a" and not some other, larger and less clearly defined word or phrase. See Shields v. Shields, 115 Mont. 146, 155, 139 Pac. (2d) 528; State ex rel. Goings v. City of Great Falls, 112 Mont. 51, 112 Pac. (2d) 1071.

The state argues for a construction which would insert in the statute the word "both" for the word "either" and the word "and" for the word "or." Such is not our office. The

law says the office of the judge is simply to ascertain and declare what is in terms or in substance contained in the statute, "not to insert what has been omitted, or to omit what has been inserted". R. C. M. 1947, sec. 93-401-15.

Here the defendant was sworn, took the witness stand and gave testimony in his own behalf. Thereby he subjected himself to impeachment in the manner and for the purpose provided in sections 93-1901-11 and 94-4723, supra.

At the outset of his cross-examination of the defendant the county attorney promptly and fully availed himself of the opportunity and advantages given him by the above statutes by propounding the usual and proper impeaching question to which the defendant made affirmative answer. The defendant's admission that he had been convicted of a felony so given from the witness chair was and is sufficient proof of that fact.

"The proof must be limited to proof of the conviction; under no circumstances may facts in evidence at the former trial or the details and circumstances of the offense be gone into." 3 Wharton's Criminal Evidence, (11th Ed.), Witnesses, sec. 1374, p. 2261.

With defendant's admission before the jury and in the record, the fact that he had theretofore been convicted of a felony was no longer in issue. Nevertheless the county attorney, over defendant's proper and timely objections, proceeded to further probe and inquire into facts not touched upon in his case in chief nor in the direct testimony of the defendant witness, thus making the defendant his own witness. Having done so he was and is bound and concluded by the answers of the witness and it was fatal error for the trial court to thereafter permit the witness to be impeached upon such testimony so injected into the case by the county attorney. State v. Smith, 57 Mont. 349, 362-365, 188 Pac. 644.

The record shows:

"Cross Examination by Mr. Hoyt:

"Q. Mr. Coloff, I believe you—

"The Witness: Mr. Hoyt, you will please just talk a little

louder because I can't hear very good. I almost got into trouble—

".The Court: We don't care about that.

"The Witness: Excuse me. Yes.

'. "Mr. Stromnes: May I request, humbly request, your consent to sit here where I can also see the witness?

' · "The Witness: Talk louder please.

"Q. Mr. Coloff, I believe that you testified a while ago that you realized you were testifying under oath, is that correct? A. Yes.

"Q. Mr. Coloff, have you ever been convicted of a felony? A. Yes.

"Q. And what was the charge?

. "Mr. Stromnes: Object to as—that the question is a—

"The Court: Overruled.

"Mr. Stromnes: May I note my exception?

"Q. What was the charge? A. I don't know. The charge was bankruptcy. I don't know just exactly what it is.

"Q. You don't know what you were charged with? A. No. I know what bankruptcy is.

"Q. Do you know what crime you were charged with? A. No, I don't know.

"Q. Do you know what you were convicted of?

"Mr. Stromnes: Just a moment. Don't answer that question now. (Whereupon the question 'Do you know what you were convicted of?' was read by the court reporter.)

"Mr. Stromnes: That is objected to as improper and highly prejudicial and we move the Court at this time for a mistrial.

"The Court: The objection is overruled. Motion denied.

"Mr. Stromnes: We now move the Court for an order admonishing the jury at this moment to disregard both the question and the answer by reason of the fact that the question was either ignorantly or knowingly put to prejudice this defendant with this jury.

"The Court: Motion denied. He has answered he didn't know. You can't go any further on that.

"Mr. Hoyt: You say I can't go any further on that?

"The Court: He says he doesn't know.

"Mr. Hoyt: Your Honor, may I make an offer of proof at this time?

"The Court: Well, yes. It will have to be made in chambers. (Whereupon, in chambers and outside the hearing of the jury, the following proceedings were had:)

"The Court: All right. Your offer. This is on cross examination. It is not required, but you may make it.

"Mr. Hoyt: If I am correct, your Honor stated that I could go no further in my line of questioning.

"The Court: Go ahead with your offer.

"Mr. Hoyt: But I offer to prove by the witness, the state offers to prove by the witness now on the stand that that witness was convicted of perjury and that he knows that he was convicted of perjury, and that this is given for purposes of impeachment of the witness now on the stand. And I cite Section 10668 of the Revised—

"The Court: Show it to me.

"Mr. Hoyt: Of the Revised Codes of Montana, 1935, and the case of State v. Garney, Mont., 207 Pac. (2d) 506, at page 506.

"Mr. Stromnes: To the offer of proof as made by the county attorney, the defendant objects for the reason that the record now discloses that the defendant admitted that he has been convicted of a felony, and that if the county attorney should be permitted to then pursue the inquiry further or pursue his proof as his offer indicates, that it would tend to degrade the defendant and to impeach the defendant in a method not known or recognized by any law or laws or decisions of the State of Montana; that such proof would not be only highly improper, but would be prejudicial to the defendant and justify an order of the Court declaring a mistrial, and would impel the Supreme Court of this state under recognized statutes and decisions to reverse any judgment or conviction in this case if a verdict of guilty were returned. The offer suggests proof, in addition to

42

its prejudicial nature and character which is entirely foreign to any issue raised by the information and the plea, and would not tend to prove or disprove any issue of fact in this case; that said proffered evidence would be further highly prejudicial for the reason it would have a tendency to put the defendant on trial in this cause for a criminal offense committed years ago and would therefore confuse the jury and would prejudice the defendant with the jury and would obfuscate the jury, and might well cause the jury to think, whether or not lawfully or properly so, and so proceed as to retry the defendant on or with respect to the offense which he has already admitted was a felony committed years ago, and thus cause one or more or all of the jurors to be confused as to the issues in this case irrespective of the instructions which his Honor will give at the termination of the testimony in the event the case reaches the jury. I think I have covered it sufficiently broadly there.

''The Court: The witness having admitted that he was convicted of a felony and having stated that he did not know the nature of the charge other than it arose out of bankruptcy proceedings, the Court is of the opinion that any further questions along this line from this particular witness is objectionable and the objection is sustained. (Whereupon, in open court, in the presence and hearing of the jury, the following proceedings were had:)

''The Court: Ladies and gentlemen of the jury you are admonished by the Court it is your duty—

''Mr. Stromnes: May I request your Honor to advise the jury that the offer of proof was denied in the record so that the jury hears it?

''The Court: Yes, the offer of proof was made and on objection made the objection was sustained. The offer of proof denied. The record of course shows that.'' Thereupon with the usual admonition to the jury the trial court recessed for two hours.

Upon convening after recess the trial court reversed its former rulings excluding the offered proof, whereupon the

county attorney offered in evidence, as the state's exhibit No. 1, the document designated "Judgment and Commitment" set forth at length in the foregoing opinion by Mr. Justice Freebourn.

Thereupon the following proceedings were had:

"Mr. Hoyt: Yes, I offer it in evidence.

"Mr. Stromnes: To which exhibit the defendant objects because it is highly prejudicial, irrelevant and not material to any of the issues of fact raised under the information or involved in this case, nor does it tend to either prove or disprove any issue in this case, but has been offered in the first instance, in my opinion, by the county attorney for the purpose of inciting prejudice in the jurors or some or one or more members thereof against the defendant, and that it serves no purpose in this case. I think that covers it.

"The Court: For what purpose is this exhibit offered?

"Mr. Hoyt: Your Honor, *this exhibit is offered for purposes of impeaching the witness now on the stand.*"

Defendant's objections were overruled and state's exhibit No. 1 was received in evidence. Whereupon the following occurred:

"Mr. Stromnes: And may I now move the Court for a mistrial because I believe that the admission of this exhibit would be prejudicial to the defendant and render him unable to obtain a fair and impartial trial from this or any jury.

"The Court: The introduction of impeaching evidence is of course prejudicial to a defendant. That is its purpose, by way of impeachment, and that is no proper objection in the Court's mind. The Court has already ruled the evidence is admissible. You had your objection.

"Mr. Stromnes: I now make a motion for a mistrial.

"The Court: Your motion is denied.

"Mr. Stromnes: I would like it in the record.

"The Court: Well, you got it in the record. Your motion is denied.

"Mr. Hoyt: May I proceed now?

"The Court: Yes. (Whereupon, in the presence and hearing of the jury, the following proceedings were had:)

"Mr. Hoyt: May I have the Court's permission to read Plaintiff's Exhibit 1 to the jury?

"The Court: You may. It can be either read now or reading reserved with the permission of counsel for the defendant or reading waived. If you want to read it you may read it.

"Mr. Hoyt: I would like to read it your Honor.

"The Court: Proceed. Mr. Hoyt: May I explain the nature of this instrument?

"The Court: No. You may read the instrument. That is all. You may explain it on argument possibly. I wouldn't say now.

"Mr. Hoyt: Very well. I will read this instrument. (Whereupon Plaintiff's Exhibit 1 was read to the jury by Mr. Hoyt.)"

By Mr. Hoyt, county attorney:

"Q. Mr. Coloff, you have heard the instrument that I just read? You heard me read it, did you? A. Yes, sir.

"Q. And do you wish to deny that the John Coloff in that instrument is the same person as yourself? A. No, I don't.

"Q. It is you? A. That is me.

"Mr. Hoyt: That is all."

Thus ended the case so far as the taking of testimony was concerned.

The statute states in plain and unambiguous language how a witness who has suffered conviction of a felony may be impeached and it expressly prohibits impeachment "by evidence of particular wrongful acts". R. C. M. 1947, sec. 93-1901-11.

Here, in direct violation of the above statutory prohibition the trial court, over defendant's objections, allowed the county attorney to place in evidence and read to the jury particular wrongful acts constituting three separate and distinct offenses under the Federal Bankruptcy Act and particularly with specific wrongful acts constituting violations of section 29, sub. b of that Act. Title 11 U. S. C. A., Bankruptcy, sec. 52, sub. b.

The evidence of particular wrongful acts so improperly placed in evidence in violation of section 93-1901-11, supra, were:

1. That on or about August 29, 1940, near Geraldine, in Chouteau county, Montana, the defendant witness, while a bankrupt, knowingly and fraudulently concealed from his trustee in bankruptcy certain real property belonging to his estate in bankruptcy, namely, (a) the SE ¼ of section 15, T. 23 N. R. 13 E., M. P. M., comprising 160 acres of the value of $650, and (b) the S ½ of section 22, T. 23 N. R. 13 E., M. P. M., comprising 320 acres of the value of $1,243;

2. That on or about August 29, 1940, at Great Falls, Montana, the defendant witness knowingly and fraudulently concealed from his trustee in bankruptcy certain personal property belonging to his estate in bankruptcy, to-wit: the sum of $260.06 in lawful money of the United States; and

3. That on or about August 29, 1940, at Great Falls in Cascade county, Montana, the defendant witness knowingly and falsely testified and made a false oath in relation to his said bankruptcy proceeding.

In State v. Smith, supra, 57 Mont. 349, 360, 188 Pac. 644, 646, wherein this court reversed the judgment of conviction and remanded the cause for a new trial, the county attorney cross-examined the defendant on matters not brought out on his direct examination. There this court said:

"'* * * though a wide latitude is allowed in the cross-examination of a defendant thus offering himself as a witness, the rules governing cross-examination must still control. * * *

"But the respondent urges that if not proper for that purpose, the questions were proper for the purpose of impeachment. This is the same contention that was made in the case of State v. Kanakaris, 54 Mont. 180, 169 Pac. 42, and was disposed of by this court in the following language: 'Upon the cross-examination of the defendant he was asked many questions by the county attorney, the purpose of which was to show that he had been guilty of numerous minor offenses, independent of the crime for which he was being tried. The attorney could have had no other object in view than to impeach the defendant

46.

or degrade him in the estimation of the jury, and for either purpose the questions are forbidden by statute.' * * *

"Under a pretense of cross-examining a witness, one party to an action cannot make out his case by witnesses for the other side. [Citing cases.] * * * Here the county attorney made the defendant his own witness to prove facts not touched upon in his case in chief, nor in the direct testimony of the witness. Having done so, he was bound by the answers of the witness, and the answer that the witness did not make the statement recited to him should have ended the matter. * * *

"In People v. Schmitz, supra [7 Cal. App. 330, 94 Pac. 407, 419, 15 L. R. A., N. S., 717], the court said: * * * 'It is of much more importance that every defendant should have a fair and impartial trial under the rules of evidence laid down by the ablest judges and established by centuries of experience than that a defendant in some particular case should be convicted.'

"In People v. Rodriguez, supra [134 Cal. 140, 66 Pac. 174], the court said:

"'If a question is put to a witness which is collateral and irrelevant to the issue, his answer cannot be contradicted by the party who asked the question, but is conclusive against him.' People v. McKeller, 53 Cal. 65; 1 Greenleaf on Ev. sec. 449. * * *

"If counsel for the state desired to prove other acts of a similar character, in corroboration, he should have introduced that evidence in his case in chief. The evidence, and all the evidence tending to show the guilt of the defendant, should have been produced, so that, in all fairness, the defendant be given the opportunity to meet that evidence as a part of his defense. Having failed to do so, and having, for the time being, made the defendant his own witness, he was bound by the answer given, and it was error for the trial court to thereafter permit him to be impeached upon such testimony. [Citing cases.] * * *

"The language employed by Mr. Justice McFarland, in the case of People v. Wells, 100 Cal. 459, 34 Pac. 1078, * * * is particularly applicable to cases such as this:

"'It is too much the habit of prosecuting officers to assume

beforehand that the defendant is guilty, and then expect to have the established rules of evidence twisted, and all the features of a fair trial distorted, in order to secure a conviction. If a defendant cannot be fairly convicted, he should not be convicted at all; and to hold otherwise would be to provide ways and means for the conviction of the innocent.' " Compare State v. Smith, 57 Mont. 563, 190 Pac. 107, wherein this court reversed the judgment of conviction and remanded the cause for a new trial.

In State v. Garney, Mont., 207 Pac. (2d) 506, in reversing the judgment of conviction and remanding the case for a new trial, this court recognized that the usual manner of making proof of a prior conviction is to ask the witness if he had theretofore been convicted of a felony and should he deny that he has been so convicted, to then produce a copy of the judgment of conviction. There we also said, "A careful search of the authorities fails to reveal any case in which the procedure adopted by the state in this case was followed. Such practice is most questionable and not to be commended." Compare State v. Black, 1894, 15 Mont. 143, 149, 38 Pac. 674; State v. Shannon, 95 Mont. 280, 287, 26 Pac. (2d) 360.

Every person charged with a crime on his plea of not guilty, has an absolute and fundamental right to a fair and impartial trial under and ·pursuant to the law of the government the sovereignty of which he is alleged to have offended and it is a duty resting on the courts, trial and appellate, and the officers thereof, including the state's attorneys, to see that this most substantial and vital right is upheld and sustained.

In State v. Shannon, supra, this court, in reversing the judgment and remanding the case for a new trial, held that the right of one on trial for crime to have his impeachment by the state confined within the limits prescribed in section 93-1901-11, supra, is a substantial right. Compare State v. Dillon, Mont., 230 Pac. (2d) 764.

Clearly the violation and denial of such substantial right so

accorded the defendant under the law effected a mistrial and constitutes reversible error.

Upon this appeal which is determined wholly upon a question of law it would be highly improper for us to weigh and pass judgment on evidence that a new jury at a new trial must hear, consider and evaluate.

I concur in Mr. Justice Freebourn's opinion in its entirety.

MR. JUSTICE ANGSTMAN: (dissenting).

I do not agree with the foregoing opinion. In order to present my views of the case I find it necessary to expose more of the record than that shown in the opinion of my associates.

When the defendant was upon the witness stand the county attorney, upon cross-examination, asked him if he had been convicted of a felony, to which he answered in the affirmative. The county attorney then asked him the following questions:

"Q. What was the charge? A. I don't know. The charge was bankruptcy. I don't know just exactly what it is.

"Q. You don't know what you were charged with? A. No. I know what bankruptcy is.

"Q. Do you know what crime you were charged with? A. No, I don't know."

The county attorney then offered in evidence the record of the conviction. Defendant's counsel thereupon interposed an objection.

The court, after considering the question during the noon recess, stated in substance that the prosecuting attorney is permitted upon an admission of the prior conviction to inquire as to the nature of the felony. The court thereupon, since defendant stated that he did not know of what crime he was convicted, overruled the objection and permitted the judgment of conviction to be read to the jury.

In some jurisdictions the only way to impeach a witness by showing he has been convicted of a felony is by the judgment of conviction. That is regarded as the best evidence. That rule was contended for in the case of Dotterer v. State, 172 Ind. 357,

88 N. E. 689, 30 L. R. A., N. S., 846, relied on in the majority opinion, and what is quoted from the opinion in that case by my associates is in answer to that contention and has nothing to do with the question involved here. To get away from that rule our statute permits this fact to be shown in the alternative, either by cross-examination of the witness or by the record of conviction.

R. C. M. 1947, sec. 94-4723, provides that such proof may be "either by the record or by his examination as such witness."

And R. C. M. 1947, sec. 93-1901-11, provides "that it may be shown by the examination of the witness, or the record of the judgment, that he has been convicted of a felony."

My associates properly concede and the rule is that these statutory provisions apply also to a defendant when he submits himself as a witness. State v. Black, 15 Mont. 143, 38 Pac. 674; State v. O'Neill, 76 Mont. 526, 248 Pac. 215; Wharton's Criminal Evidence, 11th Ed., Vol. 3, Witnesses, secs. 1383, 1387, pp. 2268, 2273.

It is always proper for the party seeking to impeach a witness by showing that he has been convicted of a felony to show the name or nature of the felony. People v. Chin Hane, 108 Cal. 597, 41 Pac. 697; People v. Eldridge, 147 Cal. 782, 82 Pac. 442; People v. Jacobs, 73 Cal. App. 334, 238 Pac. 770; People v. Muchupoff, 79 Cal. App. 306, 249 Pac. 240; Hadley v. State, 25 Ariz. 23, 212 Pac. 458; People v. Fouts, 61 Cal. App. 242, 214 Pac. 657; State v. Gilbert, 138 Or. 291, 4 Pac. (2d) 923; People v. David, 12 Cal. (2d) 639, 86 Pac. (2d) 811; People v. Jefferson, 84 Cal. App. (2d) 709, 191 Pac. (2d) 487; Brooks v. State, 192 Miss. 121, 4 So. (2d) 886; State v. Mc-Bride, Mo. Sup., 231 S. W. 592; State v. Holloway, 355 Mo. 217, 195 S. W. (2d) 662; McDaniel v. State, 8 Okl. Cr. 209, 127 Pac. 358; Stacey v. State, 79 Okl. Cr. 417, 155 Pac. (2d) 736; State v. Conwell, 36 N. M. 253, 13 Pac. (2d) 554; Spiegel v. Hays, 118 N. Y. 660, 22 N. E. 1105; Thompson v. Bankers' Mut. Casualty Ins. Co., 128 Minn. 474, 151 N. W. 180; Johns v. State,

88 Neb. 145, 129 N. W. 247. He may not however prove the details or circumstances of the crime.

The reason for permitting proof of the name or nature of the crime was well stated by the Supreme Court of Utah in State v. Crawford, 60 Utah 6, 206 Pac. 717, 719, where it said: "The weight of authority, and, we think, the better reasoning is that the jurors are entitled to know of what particular felony a witness has been convicted. The evidence of conviction is admissible for the purpose of affecting the credibility of the witness. Some crimes involve a greater degree of moral turpitude than others. Some felonies are more heinous than others. Some convictions on felony charges affect the credibility of witnesses much more than others."

The Supreme Court of Washington stated the applicable rule in State v. Steele, 150 Wash. 466, 273 Pac. 742, 743, as follows: "It is at once apparent, of course, that if the record of the conviction is introduced, it will of necessity show the nature of the offense and the extent of the punishment, and, since cross-examination is only an alternate method of proving the conviction, we see no reason why the witness may not be examined as to any matter the record itself will show, and this we think was the purpose of that part of the statute we have above quoted."

In Hadley v. State, supra, the Supreme Court of Arizona had this to say:

"The general rule, in the absence of a statute regulating the matter, when a defendant offers himself as a witness, is that it may be shown, either by the record or on cross-examination, that he has suffered previous conviction of a felony or felonies. Either method is permissible [citing authorities].

"The record, which is the best evidence of a previous conviction, may always be introduced. It, of course, would show the nature of the crime. The defendant cannot in anticipation of the exposition of his past in that particular, by testifying to it on his direct examination, prevent the prosecution from showing the nature of the crime of which he was previously convicted.

Indeed, the weight of the evidence as a factor of impeachment depends upon the character of the crime involved in the previous conviction—as, whether it involved moral turpitude or was merely malum prohibitum." [25 Ariz. 23, 212 Pac. 462.]

This court has held that it is proper to inquire as to the name or nature of the crime involved in the conviction. State v. Smith, 57 Mont. 563, 190 Pac. 107. Such is the rule also in the Federal courts. Arnold v. United States, 10 Cir., 94 F. (2d) 499, and a long list of cases cited on page 506. It may also be shown how many times a witness has been convicted. State v. Gentry, Mo. Sup., 212 S. W. (2d) 63; Hadley v. State, supra; People v. Eldridge, supra; People v. Moran, 25 Cal. App. 472, 144 Pac. 152; Dively v. People, 74 Colo. 268, 220 Pac. 991; Wharton's Criminal Evidence, 11th Ed., Vol. 3, Witnesses, sec. 1374, p. 2261.

Here defendant on his cross-examination stated that he did not know the nature of the felony of which he had been convicted. He tried to leave the impression with the jury that the charge was bankruptcy. Obviously a witness may not by this sort of evasive answer, whether intentionally evasive or not, preclude a showing of the actual crime of which he stands convicted. Where a witness equivocates in his answer as to the nature of the felony of which he stands convicted a reasonable latitude of cross-examination is permissible. Davis v. People, 77 Colo. 546, 238 Pac. 25. And the judgment itself may be introduced as the best evidence of the fact.

A like situation arose in State v. Forsha, 190 Mo. 296, 88 S. W. 746, 755, 4 L. R. A., N. S., 576, and the court disposed of the question by saying: "After the witness admitted that he had pleaded guilty to a common assault, there was nothing improper in permitting the state to show by the record that the witness had pleaded guilty to a charge of an assault with intent to kill. This testimony was admissible as affecting the credibility of the witness."

A like situation was before the Supreme Court of Michigan, in Helwig v. Lascowski, 82 Mich. 619, 46 N. W. 1033, 1034, 10

L. R. A. 378, and the court disposed of the question in that case by saying: "The facts which could formerly be shown to disqualify a witness may now be shown as affecting his credibility, and, as formerly the objecting party was not bound to accept the statement of the witness as to his interest, relationship, or conviction of crime, but might prove it against his denial, so I can see no reason why a party who desires to show like facts to discredit a witness should be bound by his answer. The statute expressly provides that such facts may be shown. The natural and, ordinarily, the easiest way to prove them, if true, is by the witness himself, but the party ought not to be deprived of his statutory right by the falsehood of the witness."

In People v. Jacobs, supra, the court held that when defendant testified that he pleaded guilty to a charge of receiving stolen property it was proper to read to him the information to show that he had pleaded guilty to the crime of grand larceny—a charge lesser than, but included within that contained in the information which charged robbery.

Here the details and circumstances surrounding the offense for which the defendant was convicted were not gone into. The judgment of conviction was all that was introduced. The jury under our statute was entitled to know not only that defendant had been convicted of a felony but the nature of that felony, as affecting his credibility as a witness.

My associates rest their opinion upon what they call the uniform trial practice in Montana. This is my first information that the trial courts of this state have followed a uniform practice on any subject. That they have not on the subject we are considering is made plain by the decision in State v. Smith, supra, where it was held proper to compel a witness over objection to answer the question whether he had not been convicted of sedition.

The statute is so plain that it needs no construction. It is not uncertain or ambiguous. The person desiring to show that a witness has been convicted of a felony may under the plain wording of the statute take his choice of two methods of proving

it. He may do so by the record or may do so upon the examination of the witness. Where, as here, the witness equivocates in his answer as to the nature of the crime of which he stands convicted, then he himself is to blame for making it necessary to resort to the judgment of conviction to prove the fact as to the nature of the crime. Furthermore, if there is room for construction of the statute, a construction will not be countenanced which ''operates to defeat the manifest purpose of the statute and the intention of the legislature as expressed by the language employed'' and the doctrine of contemporaneous or practical construction, if applicable to judicial construction by trial courts as distinguished from construction by the general public ''must be resorted to with caution and reserve. * * * In any event, to apply the doctrine of contemporaneous or practical construction to a statute, the statute so construed must be doubtful, ambiguous, or uncertain, and the ambiguity which arises from the language must be so great as to compel the court to seize upon extraneous circumstances to aid in reaching a conclusion. Where the meaning of a statute is plain, a contemporaneous or practical construction thereof will not be permitted to control, modify, destroy, abrogate, contradict, enlarge, or restrict that meaning.'' 50 Am. Jur., Statutes, sec. 319, pp. 311, 312.

My associates assert that the only witness testifying to seeing defendant commit the acts charged was the prosecutrix. That is true. The nature of the crime charged is such that generally there are no eye witnesses. But the prosecutrix was corroborated in many respects by disinterested witnesses.

The prosecuting witness testified that on the 22nd day of July, 1949, which was the day of the act in question, she was in the lobby of the hotel crying because she had no money with which to attend the fair. Defendant asked her why she was crying and she told him that she needed some money so she could go to the fair. Defendant thereupon stated to her that if she would come with him and help make some beds he would give her a dollar. This she did, and she said that as soon as

they started making the bed he pushed her on top of the bed. She then testified:

"Q. And then what happened? A. And then he took his pants, unbuttoned his pants, and held me down on the bed and pulled my jeans down to my knees.

"Q. And what else happened, Bonnie? A. And then he took his thing out, and I said, 'What's that, what's that,' and he never said anything. And then he tried to put it in my thing but his was too big and it started hurting and I started crying.

"Q. And then what happened, Bonnie? A. After he held me on the bed there, then I grabbed hold of the bedstead there and pulled myself up and when I done that I grabbed my jeans up at the same time.

"Q. And then what did you do, Bonnie? A. We—he started chasing me around the dresser and I went around the dresser.

"Q. And did John Coloff give you any money, Bonnie? A. He put his money on the bed.

"Q. And did you take any? A. Yes.

"Q. How much did you take? A. A dollar.

"Q. And then what happened, Bonnie? A. While we were running around it each time I would go around I would push the bolt a little further and finally I got it clear undone.

"Q. Where was the bolt? A. On the door. Q. And then what did you do? A. And when it was finally out I grabbed hold of the door and ran out and shut it."

The witness Thompson testified that he went to the lavatory on the second floor of the Rex hotel, on July 22nd, and while in there heard a little girl come upstairs crying. He heard a man ask her why she was crying and she said her mother had gone to the fair and that she herself didn't have any money and couldn't go; that the man then asked her to come into the room and he would give her the money. Mr. Thompson testified that he listened in the hall and heard the little girl say something about "Leave my pants be," and "What's that, what's that." That he thought the girl was being "monkeyed with" and went across the street to the depot and got two fellows to

come over with him. He and the other two men went to the hotel and listened at the door of the room where the man and girl were. The witness then left and went up town to get the sheriff and returned with him. When he and the sheriff returned the defendant was sweeping the hall upstairs. The witness Stower testified that he was one of the men who went with Thompson to the hotel and listened at the door of the room. He said he heard a lot of whispering and he heard the girl say, "That's enough, that's enough." That he went down stairs after listening five or ten minutes and started back to the depot and then came back to the hotel and upon entering it, passed a little girl who was pointed out to him as having come down from the room, and he started to follow her up town. The witness Doran also was one of the men who went with Thompson and Stower to the Rex hotel and who listened at the door. He also heard in a whisper the girl say, "That's enough, that's enough." He, after listening for some five or ten minutes, went downstairs; that he heard the door of the room open and click shut and the little girl came tripping down the stairs about a minute later; that when the girl left the hotel he and the witness Stower followed her up the street. They got a policeman and returned to the hotel. The witness directed the policeman to the room where the occurrences took place. The policeman who returned to the hotel was Mr. Dennison, the chief of police of Shelby. He saw defendant and asked him what was the trouble and the defendant answered that there was no trouble; the defendant denied that there was anybody in the room with him. It will thus be noted that the evidence given by prosecutrix was in many respects corroborated by disinterested witnesses.

My associates also make much of the fact that prosecutrix admitted to Sheriff Dunstall on the day of the alleged crime that defendant had not molested her. It should be noted in this connection that Mr. Dunstall also was asked: "Q. Was there any further conversation relative to that fact? A. No other than the fact that she became excited and started to cry

56

at the time, and I tried to pacify her and assured her that there would be no damage done to her."

Prosecutrix testified that defendant had told her. that if she told what happened, "he would bury me in the dirt. * * * and he said, I will get your aunt Helen and your cousin and your mother."

To my mind it is easily understandable in the light of this threat why this eight year old girl denied to the sheriff that defendant molested her, if we assume that she knew the meaning of the word molest.

I concede, of course, that the judgment of conviction standing against defendant "weighed heavily against" him. That is the purpose of the statute allowing him to be impeached when he submits himself as a witness.

I think Judge Hattersley ruled correctly in permitting the judgment of conviction to be received in evidence and considered by the jury.

I agree with my associates that the other instructions offered by defendant were properly refused.

In my opinion the judgment should be affirmed.

MR. JUSTICE METCALF:

I concur with Mr. Justice Angstman's dissent with respect to the admission of the record of previous commitment. The majority opinion merely comments on the evidence to indicate that the admission of the judgment and commitment in the perjury case may have been the decisive factor in the minds of the jury in finding the defendant guilty. Since the majority opinion returns this case for a new trial, I withhold any comment on the weight or sufficiency of the evidence.