2012 COA 151

**The PEOPLE of the State of Colorado, Petitioner–Appellee,**

**In the Interest of K.W., Juvenile–Appellant.**

**No. 11CA1951.**

Colorado Court of Appeals, Div. II.

Sept. 13, 2012.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2011.

John W. Suthers, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, CO, for Plaintiff–Appellee.

Matthew Sandler, Denver, CO, for Juvenile–Appellant.

Opinion by Judge STERNBERG.*

¶ 1 K.W., a juvenile, appeals the judgment adjudicating her delinquent based on findings that she committed acts that, if committed by an adult, would constitute disorderly conduct in violation of section 18–9–106(1)(a), C.R.S. 2011. The issues on appeal are whether the magistrate and the district court erred in concluding they had jurisdiction over the juvenile for the disorderly conduct offense and whether there were insufficient facts as a matter of law to support a finding of disorderly conduct. We affirm.

## I. Facts

¶ 2 On April 1, 2009 the People charged the juvenile with one count of interfering with staff or students, a class 3 misdemeanor under section 18–9–109, C.R.S.2011. This charge was based on an incident at the juvenile's high school involving two other students and a security officer. The testimony indicates that on March 18, 2009 the school's security officer received a report that two students felt threatened; therefore he instructed them to sit behind him while waiting to leave the school. The juvenile approached the students in an aggressive manner, and her friend pointed his finger at them. The security officer pushed the juvenile back as she attempted to reach the students. The juvenile responded by repeatedly addressing base obscenities to the security officer.

¶ 3 On April 1, 2009, the People filed the petition. As an alternative to prosecution, the case was diverted from the court to the Juvenile Offender Services Program. The juvenile signed the Diversion Agreement agreeing to enter the program. The People agreed not to file any charges stemming from the incident. However, the Diversion Agreement included the interference charge and said that if the juvenile did not successfully complete the program, she could be prosecuted on the original charge as well as any new charges that might be added.

¶ 4 Subsequently, the juvenile was terminated from the diversion program based on her noncompliance. Thereafter, on February 22, 2010 the People filed a second petition in delinquency in the district court. This petition encompassed the original interference charge and the additional charge of disorderly conduct, a class 1 petty offense pursuant to section 18–9–106(1)(a).

¶ 5 Following a trial before a magistrate, the juvenile was found not to be delinquent on the original charge of interfering with staff or students, but delinquent on the charge of disorderly conduct. Prior to sentencing, the juvenile challenged the court's jurisdiction to adjudicate her on the disorderly conduct charge because the second petition for delinquency was filed outside the six-month statute of limitations for a petty offense. The magistrate concluded that the court had jurisdiction and sentenced the juvenile to six months probation.

¶ 6 Requesting review of the magistrate's order, the juvenile attacked the court's jurisdiction over the disorderly conduct charge as well as the sufficiency of the evidence as a matter of law to support her adjudication. The district court affirmed the magistrate's order, and this appeal followed.

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2011.

## II. Jurisdiction

¶ 7 The juvenile contends that the magistrate and the district court erred when they exercised jurisdiction over the disorderly conduct charge. We do not agree.

### A. Standard of Review

¶ 8 Interpretation of a statute is a question of law subject to de novo review. *Robles v. People,* 811 P.2d 804, 806 (Colo.1991). When interpreting a statute, this court must give effect to the legislature's purpose and intent by examining the plain and ordinary meaning of the statutory language. *People v. Madden,* 111 P.3d 452, 457 (Colo.2005). We read words and phrases in context and construe them literally according to common usage. *People v. J.J.H.,* 17 P.3d 159, 162 (Colo.2001).

¶ 9 However, if the plain language is ambiguous, the court has an obligation to analyze the whole statute to provide consistent, harmonious, and logical effect to all its parts. *People v. Summers,* 208 P.3d 251, 254 (Colo. 2009). If the language is ambiguous, the court relies on other factors such as legislative history, the consequences of a given construction, and the ends achieved by the statute. *People v. Yascavage,* 101 P.3d 1090, 1093 (Colo.2004). The court must avoid a construction that is contradictory to the legislative scheme as a whole. *Klinger v. Adams County School Dist. No. 50,* 130 P.3d 1027, 1031 (Colo.2006).

### B. Law

¶ 10 Subject matter jurisdiction concerns the court's authority to deal with a class of cases, not its authority to enter a particular judgment within that class. *People v. Stanley,* 169 P.3d 258, 260 (Colo.App. 2007). Subject matter jurisdiction is conferred by the constitution and the laws of the state. *People v. Wilson,* 251 P.3d 507, 508 (Colo.App.2010).

¶ 11 Section 16–5–401(1)(a), C.R.S.2011, provides in part that no "adult person or juvenile shall be prosecuted, tried, or punished for any offense or delinquent act unless the indictment, information, complaint, or petition in delinquency is filed in a court of competent jurisdiction" within the applicable time period. For petty offenses the applicable period is six months.

¶ 12 There are enumerated exceptions to the statute of limitations. In *People v. Verbrugge,* 998 P.2d 43, 44 (Colo.App.1999), a division of this court held that the statute of limitations in a criminal case is jurisdictional and operates as a bar to entry of judgment on a lesser nonincluded offense for which a statute of limitations has expired. In response to *Verbrugge,* the General Assembly amended the statute of limitations to add an exception for, inter alia, charges "brought to facilitate the disposition of a case." § 16–5–401(12), C.R.S.2011; *see also Wilson,* 251 P.3d at 508. Therefore, section 16–5–401(12) now tolls the limitations period for charges "brought to facilitate the disposition of the case."

¶ 13 Under section 19–2–704, C.R.S.2011, the prosecution may agree to allow a juvenile to participate in a diversion program as an alternative to prosecuting a petition for delinquency. Diversion means "a decision made by a person with authority or a delegate of that person that results in specific official action of the legal system not being taken in regard to a specific juvenile or child and in lieu thereof providing individually designed services by a specific program." § 19–1–103(44), C.R.S.2011.

¶ 14 Additionally, we interpret the language in section 16–5–401(12), which makes the limitations period inapplicable to charges "brought to facilitate the disposition of a case," to include a diversion program as contemplated in section 19–2–704. Based on the clear intent of the legislature, a diversion program is offered as an alternative to "facilitate the disposition of a case."

### C. Application

¶ 15 Here, the juvenile was initially charged within the six-month statute of limitations period and entered into a diversion program. After she failed the diversion program, the People added an additional charge eleven months after the date she was initially charged.

¶ 16 The district court determined that, although a diversion program "does not

fall as clearly within the 'brought to facilitate the disposition of a case' exception" to the statute of limitations, participating in a juvenile diversion is still covered under section 16–5–401(12) and tolling the limitations period during the diversion is consistent with the intent of the legislature. The court also noted that any other interpretation would lead to an "absurd result."

¶ 17 The juvenile disagrees with these interpretations of section 16–5–401(12) and argues that the disorderly conduct charge was not brought either to facilitate the disposition of this case or as a lesser included charge.

¶ 18 The People contend that the "to facilitate the disposition of the case" exception in section 16–5–401(12) should apply and therefore diversion programs must toll the statute of limitations. They point to (1) the clear policy reasons behind the statute of limitations; (2) the legislature's intent in tolling the statute of limitations in comparable situations; (3) the preference to facilitate disposition of charges; (4) the preference to first place juveniles in a diversion program to avoid the formal trial process; and (5) the fact that the diversion program is treated similarly to a plea agreement.

¶ 19 Initially we note that the Diversion Agreement the juvenile signed explained that if she were unsuccessful in diversion, she could be charged with new offenses, the old offense, or both. The juvenile has not alleged that she did not understand the agreement. Therefore, there can be no colorable claim that the juvenile was not aware of the potential for an additional charge if she did not succeed in the diversion program.

¶ 20 We agree with the magistrate and the district court that the intent of the legislature in creating diversion programs was to provide an opportunity for juveniles to be diverted from the judicial system into a program whose focus is rehabilitation rather than punishment. *See* § 19–2–102, C.R.S. 2011 (preference for juvenile restorative process instead of punitive result); *see generally* § 19–1–103(44) (diversion allows for individually designed services in a special program in order to prevent further involvement of juvenile in formal legal system).

¶ 21 Thus, as a consequence, if the statute of limitations were not tolled during the diversion there would be no incentive for the prosecution to offer the diversion program to new offenders. Nor would there be any inducement for an offender to try to comply with the program if there were no consequences for failure.

¶ 22 *People v. Lowry,* 160 P.3d 396, 397 (Colo.App.2007), supports this interpretation. *Lowry* stands for the proposition that a defendant forfeits or waives the protection of the statute of limitations when he or she benefits from a lesser conviction by either requesting a lesser offense instruction at trial or pleading guilty to a lesser offense. Here, as in *Lowry,* the juvenile benefited from her admission into the diversion program, and the offer to enroll her in the program was meant to dispose of the case. Therefore she should not be allowed to now rely on the statute of limitations as a defense, having waived that defense when she chose to enter into the diversion program. *See also Wilson,* 251 P.3d at 509.

¶ 23 Nor does *People v. Ware,* 39 P.3d 1277, 1278–79 (Colo.App.2001), relied on by the juvenile, persuade us otherwise. In *Ware,* a division of this court held that the statute of limitations was not tolled when the prosecution charged a juvenile as an adult in absentia; seven years later the juvenile, then an adult, was apprehended; and charges were refiled in juvenile court. Here, only six months, not seven years, had passed between the time she entered the diversion program and charges were filed the second time; the juvenile was not charged in absentia; and the juvenile had voluntarily agreed to enter into the diversion program rather than to proceed with adjudication.

¶ 24 Therefore, we conclude that the court here had jurisdiction to adjudicate the juvenile on the disorderly conduct charge because the limitations period for bringing the charge was tolled while the Diversion Agreement concerning the same conduct was pending. *See* §§ 16–5–401(12), 19–2–704.

### III. Sufficiency of the Evidence

¶ 25 The juvenile argues that as a matter of law there was insufficient evidence to ad-

judicate her on the disorderly conduct offense. We disagree.

¶ 26 As a preliminary matter, based on our perusal of the record, we reject the People's contention that this issue was not preserved for review, and we address the merits of the claim.

## A. Standard of Review

¶ 27 An appellate court reviews de novo a defendant's assertion that the evidence was insufficient to support a conviction. *Dempsey v. People*, 117 P.3d 800, 807 (Colo.2005). An appellate court must determine whether any rationale trier of fact might accept the evidence, taken as a whole and in the light most favorable to the prosecution, as sufficient to support a finding of guilt beyond a reasonable doubt. *People v. Sprouse*, 983 P.2d 771, 777 (Colo.1999).

¶ 28 The prosecution receives the benefit of every reasonable inference that might be fairly drawn from the evidence. *People v. McIntier*, 134 P.3d 467, 471 (Colo.App.2005). Determinations of witness credibility and the weight to be given to the evidence lie with the fact finder. *Id.* The fact finder must resolve any inconsistencies in the testimony and the evidence. *Id.* An appellate court is not permitted to act as a thirteenth juror and set aside a verdict because it might have drawn a different conclusion had it been the trier of fact. *Clark v. People*, 232 P.3d 1287, 1291–92 (Colo.2010).

## B. Law

¶ 29 Section 18–9–106(1)(a) provides:

A person commits disorderly conduct if he or she intentionally, knowingly, or recklessly ... [m]akes a coarse and obviously offensive utterance, gesture, or display in a public place and the utterance, gesture, or display tends to incite an immediate breach of the peace.

¶ 30 The United States Supreme Court has held that states are free to ban the simple use of "fighting words," those personal abusive epithets that when directed to the ordinary citizen are inherently likely to provoke a violent reaction. *Cohen v. California*, 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2d 284

(1971); *People v. Smith*, 862 P.2d 939, 943 (Colo.1993) ("fighting words" are words which by their very utterance tend to excite others to unlawful conduct or to provoke retaliatory action amounting to a breach of the peace). The context or circumstances in which the language is used must also be considered. *F.C.C. v. Pacifica Found.*, 438 U.S. 726, 745, 98 S.Ct. 3026, 57 L.Ed.2d 1073 (1978).

¶ 31 As a result, "fighting words" are not afforded the stringent protection traditionally afforded to speech by the First Amendment. *Cohen*, 403 U.S. at 20, 91 S.Ct. 1780; *see also State v. Groves*, 219 Neb. 382, 386, 363 N.W.2d 507, 510 (1985) (holding words similar to those used here are fighting words and not constitutionally protected speech); *State v. Wood*, 112 Ohio App.3d 621, 630, 679 N.E.2d 735, 741 (1996) (holding words similar to those used here either verbally or via gesture may be considered fighting words under certain circumstances).

¶ 32 Whether a breach of the peace actually occurs is not determinative of a violation. *Shuler v. State*, 195 Ga.App. 849, 850, 395 S.E.2d 26, 28 (1990) (holding that the fact actual violence did not ensue is not determinative); *In re S.J.N–K*, 647 N.W.2d 707, 711–12 (S.D.2002).

## C. Application

¶ 33 Here, the juvenile alleges that her use of "F--- Y--" directed toward the security officer was insufficient to sustain her adjudication for disorderly conduct. She argues that there was no evidence or testimony that a breach of the peace ensued. Moreover, she alleges that it was not her intent to breach the peace; rather, she used the words in response to being pushed by the security officer.

¶ 34 However, the evidence adduced at trial and relied on by the magistrate and the district court indicated more than merely uttering the base obscenity one time; rather the juvenile was present in an area with two other students who had previously indicated that she was threatening to harm them, she was hostile, and her companion was pointing his finger at them. This resulted in the security guard physically intervening to push

the juvenile back from the two students and clear the area. During the interaction the juvenile repeatedly yelled the base obscenities at the security officer in an aggressive manner. According to testimony, there was no physical altercation, and neither the security officer nor the two students were personally offended by the juvenile's words.

¶ 35 We conclude that this evidence, as determined by the magistrate and the district court, is sufficient to indicate that had the security officer not been present, it is possible that a breach of the peace would have occurred. It is not determinative that a breach of the peace did not actually occur. *Shuler v. State*, 195 Ga.App. at 850, 395 S.E.2d at 28.

¶ 36 However, the juvenile relies on *Ware v. City & County of Denver*, 182 Colo. 177, 178–79, 511 P.2d 475, 476 (1973), to argue that her adjudication cannot stand. In *Ware*, a conviction for disorderly conduct for uttering these base obscenities was reversed where there was neither a breach of the peace nor evidence that the defendant attempted to breach the peace. In that case, the defendant, a nonstudent, was among 200 people at the University of Denver to hear representatives of the United States Department of Justice. *Id.* When the meeting was opened for questions, answers were provided that a number of individuals in the audience found unsatisfying, and they responded by shouting, laughing, and uttering various "fighting words." *Id.*

¶ 37 This case is distinguishable from *Ware*, because here the testimony indicates that the juvenile was hostile and threatening, refused to leave the scene, and attempted to reach the students, causing the security officer to intervene and push her back. This evidence can be interpreted as an attempt by the juvenile to breach the peace. Thus, we conclude that the evidence was sufficient to support the disorderly conduct adjudication.

¶ 38 The judgment is affirmed.

Judge GRAHAM and Judge FURMAN concur.