Colorado Court of Appeals Opinions || August 27, 2015


Colorado Court of Appeals -- August 27, 2015
2015 COA 119. No. 14CA0622. People in the Interest of J.O.



 Â 

 
 
 
 COLORADO COURT OF APPEALS

 
 2015 COA 119

 
 



 Court of Appeals No. 14CA0622
 Weld County District Court No. 12JD631
 Honorable Thomas J. Quammen, Judge


 The People of the State of Colorado,

 Plaintiff-Appellee,

 In the Interest of J.O.,

 Juvenile-Appellant.


 JUDGMENT AFFIRMED

 Division IV
 Opinion by JUDGE WEBB
 Graham and Terry, JJ., concur

 Announced August 27, 2015


 Cynthia H. Coffman, Attorney General, Joseph G. Michaels, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

 Douglas K. Wilson, Colorado State Public Defender, Kathryn Crampton, Deputy State Public Defender, Greeley, Colorado, for Juvenile-Appellant

 
 Â¶1nbsp;Â Â Â Â Â Â Â  This case might lead one to ponder burdening a juvenile offender about to start adult life with sex offender registration for an indeterminate period of time.

 Â¶2nbsp;Â Â Â Â Â Â Â  J.O. was adjudicated delinquent for acts that, if committed by an adult, would constitute misdemeanor unlawful sexual contact, attempted misdemeanor unlawful sexual contact, and two counts of indecent exposure. He was fifteen years old at the time of the charged offenses. As part of the adjudication, the magistrate ordered J.O. to register as a sex offender and âcomply with all duties and obligations for registration.â On review under C.R.M. 7(a)(10), the district court adopted the magistrateâs ruling.

 On appeal, J.O. raises three questions:

 
 Was the evidence sufficient to support the adjudication?

 
 Did he meet the first offense criterion for the magistrate to exercise discretion under section 16-22-103(5), C.R.S. 2014, and exempt him from sex offender registration?

 
 Did the requirement to register as a sex offender violate his rights under the Eighth Amendment?



 The third question echoes recent judicial recognition that juvenile offenders âare different from adults in their diminished culpabilityÂ and greater prospects for reform . . . [and] are therefore less deserving of the most severe punishments.â People v. Tate, 2015 CO 42, Â¶28 (internal quotation marks omitted).

 Â¶3Â Â Â Â Â Â Â  As matters of first impression in Colorado, we conclude thatÂ 

 
 Because J.O. was simultaneously adjudicated for unlawful sexual contact and indecent exposure, he did not meet the first offense criterion in section 16-22-103(5)(a)(III) for exemption from sex offender registration.

 
 Because sex offender registration is not punishment, requiring him to register did not violate his constitutional rights. And because the evidence was sufficient to support the adjudication, we affirm.



 Â¶4nbsp;Â Â Â Â Â Â Â  We begin with the two novel issues.

 I. J.O. Did Not Meet the First Offense Criterion in Section
 16-22-103(5) for Exemption from Sex Offender Registration

 Â¶5nbsp;Â Â Â Â Â Â Â  Under section 16-22-103(5)(a), if the trial court

 determines that the registration requirement . . . would be unfairly punitive and that exempting the person from the registration requirement would not pose a significant risk to the community, the court, upon consideration of the totality of the circumstances, may exempt the person fromÂ the registration requirements imposed pursuant to this section.

 But a court can exercise this discretion only if all of the following criteria have been satisfied:

 (I) The person was younger than eighteen years of age at the time of the commission of the offense; and

 (II) The person has not been previously charged with unlawful sexual behavior; and

 (III) The offense, as charged in the first petition filed with the court, is a first offense of either misdemeanor unlawful sexual contact, as described in section 18-3-404, C.R.S., or indecent exposure, as described in section 18-7-302, C.R.S.; and

 (IV) The person has received a sex offender evaluation that conforms with the standards developed pursuant to section 16-11.7-103(4)(i), from an evaluator who meets the standards established by the sex offender management boardÂ  and the evaluator recommends exempting the person from the registration requirements based upon the best interests of that person and the community; and

 (V) The court makes written findings of fact specifying the grounds for granting such exemption.

 Id. Otherwise, juveniles who have been adjudicated on the basis of unlawful sexual behavior must comply with sex offenderÂ registration requirements. Â§ 16-22-103(4) (âThe provisions of this article shall apply to any person who receives a disposition or is adjudicated a juvenile delinquent based on the commission of any act that may constitute unlawful sexual behavior or who receives a deferred adjudication based on commission of any act that may constitute unlawful sexual behavior.â).

 Â¶6Â Â Â Â Â Â Â  J.O. and the prosecutor agreed, as did the magistrate and the district court, that the only criterion in dispute was whether âthe offense, as charged in the first petition filed with the court, is a first offense of either misdemeanor unlawful sexual contact . . . or indecent exposure.â Â§ 16-22-103(5)(a)(III) (emphasis added). The magistrate found:

 I donât believe I can come to any other conclusion that he does not qualify under [section 16-22-103(5)(a)(III)], and that [he] does not meet within the qualifications as created by the legislature to be able to be exempt from registration . . . . I believe that he cannot be exempt based upon the convictions of four counts of unlawful sexual behavior . . . . And, unfortunately, I donât believe I have any other choice than whatâs being made, the choice presented to me by the legislature and it is, I believe, clear that I have to order then, [J.O.], that you will have to register as part of your sentence in this case.

 The district court agreed.

 A. Standard of Review

 Â¶7nbsp;Â Â Â Â Â Â Â  Interpreting section 16-22-103(5)(a)(III) is a question of law subject to de novo review. Granite State Ins. Co. v. Ken Caryl Ranch Master Assân, 183 P.3d 563, 567 (Colo. 2008). This review is informed by the following familiar principles.

 Â¶8nbsp;Â Â Â Â Â Â Â  When interpreting a statute, our primary objective is to effectuate the intent of the General Assembly by looking at the plain meaning of the language used, considered within the context of the statute as a whole. Bly v. Story, 241 P.3d 529, 533 (Colo. 2010). If the statutory language is clear and unambiguous, we do not resort to legislative history or other rules of statutory construction. Smith v. Exec. Custom Homes, Inc., 230 P.3d 1186, 1189 (Colo. 2010). In examining a statuteâs wording, â[w]e do not presume that the legislature used language idly and with no intent that meaning should be given to its language.â Colo. Water Conservation Bd. v. Upper Gunnison River Water Conservancy Dist., 109 P.3d 585, 597 (Colo. 2005) (internal quotation marks omitted). Rather, âwe strive to interpret statutes in a manner that avoids rendering anyÂ provision superfluous.â Qwest Corp. v. Colo. Div. of Prop. Taxation, 2013 CO 39, Â¶16.

 B. Application

 Â¶9nbsp;Â Â Â Â Â Â Â  J.O. was adjudicated delinquent based on four separate offenses. Yet he argues â relying on only the plain language of section 16-22-103(5)(a)(III) â that because âeach of the adjudications reached by the trial court were simultaneously rendered,â collectively they constituted a âfirst offense.â But because J.O. was adjudicated as to both misdemeanor unlawful sexual contact and indecent exposure, we conclude that he did not satisfy subsection 16-22-103(5)(a)(III).[1]

 Â¶10Â Â Â Â Â Â Â  To begin, we agree with J.O. and the Attorney General that section 16-22-103(5)(a)(III) is unambiguous. See Jefferson Cnty. Bd. of Equalization v. Gerganoff, 241 P.3d 932, 935 (Colo. 2010) (âA statute is ambiguous when it âis capable of being understood by reasonably well-informed persons in two or more different senses.ââ (quoting 2A Norman J. Singer & J.D. Shambie Singer, SutherlandÂ Statutes & Statutory Construction Â§ 45:2, at 13 (7th ed. 2007)). â[A] statute is not ambiguous merely because an astute mind can devise more than one interpretation of it.â Jayo Dev., Inc. v. Ada Cnty. Bd. of Equalization, 345 P.3d 207, 211 (Idaho 2015).

 Â¶11Â Â Â Â Â Â Â  At first blush, one might conclude â as have many courts â that âorâ is simply a disjunctive which âreflects a choice of equally acceptable alternatives.â Willhite v. Rodriguez-Cera, 2012 CO 29, Â¶18; see, e.g., Rivera-Bottzeck v. Ortiz, 134 P.3d 517, 521 (Colo. App. 2006) (âOrdinarily, the use of the word âorâ is assumed to demarcate different categories.â); Â§ 2-4-101, C.R.S. 2014 (âWords and phrases shall be . . . construed according to the rules of grammar and common usage.â); Websterâs Third New International Dictionary 1585 (2002) (defining âorâ as indicating âa choice between alternative things, states, or coursesâ). But a closer look at the etymology of âorâ leaves open the question whether a juvenile who has been adjudicated â simultaneously but for the first time â of both misdemeanor unlawful sexual contact and indecent exposure could still meet the criteria of this section.

 Â¶12Â Â Â Â Â Â Â  We answer this question by considering whether the General Assemblyâs use of âorâ is inclusive or exclusive. See Matter of EstateÂ of Dodge, 685 P.2d 260, 265-66 (Colo. App. 1984) (â[T]he English word âorâ has two counterparts in Latin: (1) âvelâ (often referred to as the âinclusive orâ), meaning A or B, or both; and (2) âautâ (often referred to as the âexclusive orâ), meaning A or B, but not both.â (citing Reed Dickerson, The Fundamentals of Legal Drafting 76 (1965) (emphasis omitted))); compare id. (â[O]bservation of legal usage suggests that in most cases âorâ is used in the inclusive, rather than the exclusive, sense.â (internal quotation marks omitted)), with Denver Horse Imp. Co. v. Schafer, 58 Colo. 376, 384, 147 P. 367, 370 (1915) (The term âorâ is â[a] co-ordinating particle that marks an alternative; as you may read or may write â that is, you may do one of the things at your pleasure, but not both . . . .â (internal quotation marks omitted)).[2]

 Â¶13Â Â Â Â Â Â Â  For the following two reasons, we conclude that use of âorâ in subsection 16-22-103(5)(a)(III) is exclusive.

 Â¶14Â Â Â Â Â Â Â  First, the General Assemblyâs use of âorâ is limited by the word âeither.â This âsimple word . . . means âeither,â â not âboth.ââ State v. Coloff, 231 P.2d 343, 346 (Mont. 1951); see Stanley v. Cottrell, Inc., 784 F.3d 454, 466 (8th Cir. 2015) (finding the term âorâ ambiguous where â[t]he plain language of the statute contain[ed] no limiting words or phrases â such as âeitherâ . . . .â); Websterâs Third New International Dictionary 728 (2002) (The word âeitherâ means âthe one or the other of two.â).

 Â¶15Â Â Â Â Â Â Â  Second, section 16-22-103(5)(a)(III) refers to âthe offense.â (Emphasis added.) â[T]heâ is a definite article that âparticularizes the subject which it precedes.â Brooks v. Zabka, 168 Colo. 265, 269, 450 P.2d 653, 655 (1969). âIt is a word of limitation as opposed to the indefinite or generalizing force of âaâ or âan.ââ Id.; see Zerba v. Dillon Cos., Inc., 2012 COA 78, Â¶40 (âThe General Assemblyâs use of a definite article, âthe,â suggests to us that it did not intend all retirement benefits to be offset under this subsection . . . .â). By referring to âthe offense,â the General Assembly limitedÂ section 16-22-103(5)(a)(III) to misdemeanor unlawful sexual contact or indecent exposure, but not both.

 Â¶16Â Â Â Â Â Â Â  In the end, because J.O. was adjudicated of both misdemeanor unlawful sexual conduct and indecent exposure, albeit in the same proceeding, he did not meet the first offense criterion of section 16-22-103(5)(a)(III). As a result, we conclude that the magistrate did not err in finding J.O. ineligible for discretionary exemption from sex offender registration. This conclusion requires us to take up his constitutional argument.

 II. Requiring J.O. to Register as a Sex Offender Did Not Violate His Constitutional Rights

 Â¶17Â Â Â Â Â Â Â  The Eighth Amendment prohibits âcruel and unusual punishments,â U.S. Const. amend. VIII, and âguarantees individuals the right not to be subjected to excessive sanctions,â Roper v. Simmons, 543 U.S. 551, 560 (2005). âThat right . . . flows from the basic precept of justice that punishment for crime should be graduated and proportioned to both the offender and the offense.â Miller v. Alabama, 567 U.S. ___, 132 S. Ct. 2455, 2463 (2012) (internal quotation marks omitted).

 Â¶18Â Â Â Â Â Â Â  The Supreme Court has recognized that âchildren are constitutionally different from adults for purposes of sentencing.â Id. at ___, 132 S. Ct. at 2464. As a result, the Court has held that the Eighth Amendmentâs proscription against cruel and unusual punishment prevents imposition of the death penalty for offenses committed by juveniles, Roper, 543 U.S. at 574-75, a sentence of life imprisonment without the possibility of parole for juveniles convicted of nonhomicide offenses, Graham v. Florida, 560 U.S. 48, 74-75 (2010), and a mandatory sentence of life without the possibility of parole for homicide committed by a juvenile, Miller, 567 U.S. at ___, 132 S. Ct. at 2469.

 Â¶19Â Â Â Â Â Â Â  In J.O.âs view, this line of authority also means that the Eighth Amendment prohibits the possibility of lifetime sex offenderÂ registration for juveniles.[3] He reasons that sex offender registration constitutes punishment for juveniles; and registration has âsignificant and long-lasting impact[s]â that âcontradict[] . . . the rehabilitative goals of the juvenile system.â On review of the magistrateâs order, the district court rejected this argument. It held that âbecause sex offender registration does not constitute punishment it does not implicate the protections of the Eighth Amendment.â For the same reason, we also conclude that requiring J.O. to register as a sex offender did not violate the Eighth Amendment.

 A. Standard of Review and Law

 Â¶20Â Â Â Â Â Â Â  The constitutionality of a trial courtâs sentencing determination is subject to de novo review. People v. Wilder, 2015 COA 14, Â¶10.

 B. Sex Offender Registration is Not Punishment

 Â¶21Â Â Â Â Â Â Â  Before addressing whether a punishment is cruel and unusual under the Eighth Amendment, we must determine whether the underlying basis for J.O.âs constitutional claim represents punishment.[4] We adhere to Colorado precedent holding that it does not.

 Â¶22Â Â Â Â Â Â Â  In Colorado, â[s]ex offender registration is not an element of a defendantâs sentence, and the purpose of registration is not to punish the defendant, but to protect the community and to aid law enforcement officials in investigating future sex crimes.â People v. Carbajal, 2012 COA 107, Â¶37; see People v. Montaine, 7 P.3d 1065,Â 1067 (Colo. App. 1999) (The duty to register âdoes not enhance [a] defendantâs punishment for the offense.â Rather, it âafford[s] the public with limited access to information concerning persons convicted of offenses involving sexual behavior as a public safety measure.â (internal quotation marks omitted)). These Colorado cases comport with the position of the Supreme Court. Smith v. Doe, 538 U.S. 84, 93 (2003) (upholding Alaska Sex Offender Registration Actâs constitutionality because statutory textâs stated public safety objective was nonpunitive).

 Â¶23Â Â Â Â Â Â Â  This public safety rationale has been applied to juveniles in Colorado. In People in Interest of J.T., 13 P.3d 321, 323 (Colo. App. 2000), the division rejected the argument âthat a juvenile is constitutionally entitled to a jury trial whenever the adjudication of delinquency will result in a requirement that the juvenile register as a sex offender.â It explained that because â[t]he statutory duty to register as a sex offender is not a criminal punishment, [it] does notÂ give rise to [such] a constitutional right.â Id.[5] But no Colorado court has addressed the ongoing viability of this rationale after Roper, Graham, and Miller.

 Â¶24Â Â Â Â Â Â Â  Most jurisdictions to have addressed this issue continue to hold that sex offender registration for a juvenile is not punitive.

 Â¶25Â Â Â Â Â Â Â  Consider United States v. Juvenile Male, 670 F.3d 999, 1005 (9th Cir. 2012), where the court analyzed whether imposing sex offender registration on juveniles under the Sex Offender Registration and Notification Act (SORNA), 42 U.S.C. Â§ 16901 (2012), violated the Eighth Amendment. It explained:

 Although . . . SORNA may have the effect of exposing juvenile defendants and their families to potential shame and humiliation for acts committed while still an adolescent, the statute does not meet the high standard of cruel and unusual punishment. . . . These juveniles do not face any risk of incarceration or threat of physical harm. In fact, at least two other circuits have held that SORNAâs registration requirement is not even a punitiveÂ measure, let alone cruel and unusual punishment.

 Id.

 Â¶26Â Â Â Â Â Â Â  Similarly, in United States v. Under Seal, 709 F.3d 257, 266 (4th Cir. 2013), the court held that âwhen [Congress] enacted SORNA, [it] did not intend to impose additional punishment for past sex offenses but instead wanted to put into place a non-punitive, civil regulatory scheme.â Thus, the court rejected a juvenileâs assertion that sex offender registration requirements violated the Eighth Amendment:

 SORNA does not subject Appellant to an affirmative disability or restraint. It imposes no physical restraint, and so does not resemble the punishment of imprisonment . . . . SORNA does not restrain activities sex offenders may pursue but leaves them free to change jobs or residences, and registrants need not seek permission to do so. SORNA does not prohibit changes, it only requires that changes be reported. Although Appellant is required under SORNA to appear periodically in person to verify his information and submit to a photograph, this is not an affirmative disability or restraint. Appearing in person may be more inconvenient, but requiring it is not punitive.

 Id. at 265 (citations and internal quotation marks omitted).[6]

 Â¶27Â Â Â Â Â Â Â  Undaunted, J.O. relies on In re C.P., 967 N.E.2d 729, 741 (Ohio 2012), where the court concluded that a statute imposing an automatic, lifetime requirement of sex offender registration and notification on juveniles violated the Eighth Amendment. The court reasoned:

 For a juvenile offender, the stigma of the label of sex offender attaches at the start of his adult life and cannot be shaken. With no other offense is the juvenileâs wrongdoing announced to the world. Before a juvenile can even begin his adult life, before he has a chance to live on his own, the world will know of his offense. He will never have a chance to establish a good character in the community. He will be hampered in his education, in his relationships, and in his work life. His potential will be squelched before it has a chance to show itself.

 Id.[7] But for two reasons, this case is not persuasive in Colorado.

 Â¶28Â Â Â Â Â Â Â  First, the C.P. court premised its analysis on sex offender registration in Ohio having been held to be generally punitive. See State v. Williams, 952 N.E.2d 1108, 1112 (Ohio 2011) (â[A]ll doubt has been removed: [Ohioâs sex offender registration statute] is punitive.â). Yet, as discussed above, Colorado courts have reached the opposite conclusion.

 Â¶29Â Â Â Â Â Â Â  Second, C.P. involved âautomatic, lifelong registration and notification requirements on juvenile sex offenders tried within the juvenile system.â 967 N.E.2d at 759 (Cupp, J., dissenting) (internal quotation marks omitted). But under section 16-22-113(1)(e), C.R.S. 2014, J.O. could petition to discontinue registration after successfully completing and being discharged from his juvenile sentence or disposition.

 Â¶30Â Â Â Â Â Â Â  Without more, we decline to depart from Colorado cases holding that sex offender registration under section 16-22-103 â even as applied to juveniles â does not constitute punishment. And having concluded that requiring juvenile sex offenders toÂ register does not constitute punishment under the Eighth

 Amendment, we need not address whether registration is cruel and unusual.

 III. The Evidence Was Sufficient to Support J.O.âs Adjudication

 Â¶31Â Â Â Â Â Â Â  J.O. challenges holdings of the magistrate and the district court that the evidence was sufficient.

 A. Preservation and Standard of Review

 Â¶32Â Â Â Â Â Â Â  After the prosecution rested, J.O.âs counsel moved for judgment of acquittal arguing, as he does on appeal, that the evidence did not show J.O. possessed the requisite intent for unlawful sexual contact and indecent exposure. The motion and argument preserved the issue.

 Â¶33Â Â Â Â Â Â Â  Whether sufficient evidence supports an adjudication is reviewed de novo. People v. Poe, 2012 COA 166, Â¶13. In doing so, a reviewing court âmay not substitute [its] judgment for that of the [trier of fact] and reweigh the evidence or the credibility of witnesses.â Id. at Â¶14 (internal quotation marks omitted). Rather, review is limited to whether the direct and circumstantial evidence presented could âsupport the [adjudication] beyond a reasonable doubt [while] giv[ing] the prosecution the benefit of every reasonableÂ inference that might fairly be drawn from the evidence.â Id.; see People in Interest of K.W., 2012 COA 151, Â¶Â¶27-28.

 B. Application

 1. Law

 Â¶34Â Â Â Â Â Â Â  Under section 18-3-404(1)(a), â[a]ny actor who knowingly subjects a victim to any sexual contact commits unlawful sexual contact if . . . [t]he actor knows that the victim does not consent.â âSexual contactâ is defined as:

 the knowing touching of the victimâs intimate parts by the actor, or of the actorâs intimate parts by the victim, or the knowing touching of the clothing covering the immediate area of the victimâs or actorâs intimate parts if that sexual contact is for the purposes of sexual arousal, gratification, or abuse.

 Â§ 18-3-401(4), C.R.S. 2014 (emphasis added). âA person commits criminal attempt if, acting with the kind of culpability otherwise required for commission of an offense, he engages in conduct constituting a substantial step toward the commission of the offense.â Â§ 18-2-101(1), C.R.S. 2014.

 Â¶35Â Â Â Â Â Â Â  Under section 18-7-302(1), a person commits indecent exposure:

 (a) If he or she knowingly exposes his or her genitals to the view of any person under circumstances in which such conduct is likely to cause affront or alarm to the other person with the intent to arouse or to satisfy the sexual desire of any person;

 (b) If he or she knowingly performs an act of masturbation in a manner which exposes the act to the view of any person under circumstances in which such conduct is likely to cause affront or alarm to the other person.

 (Emphasis added.)

 2. Analysis

 Â¶36Â Â Â Â Â Â Â  J.O. asserts that sections 18-3-404(1)(a), 18-7-302(1)(a), and 18-7-302(1)(b) all require proof that he acted with a specific âsexual mens reaâ â meaning he must have intended for his actions to be for a sexual purpose. But according to J.O., evidence that he had a joking demeanor throughout the encounter and was not aroused shows that he lacked such an intent.

 a. Attempted Unlawful Sexual Contact

 Â¶37Â Â Â Â Â Â Â  In People v. Vigil, 127 P.3d 916, 931 (Colo. 2006), the supreme court held that the phrase âfor the purposes ofâ in section 18-3-404 did not establish a specific intent crime. Similarly, in People v. Lovato, 2014 COA 113, Â¶29, the division disagreed that the phraseÂ âfor the purpose of sexual arousal, gratification, or abuse,â required that the proscribed act âbe motivated or accomplished by some kind of sexual intent.â

 Â¶38Â Â Â Â Â Â Â  Here, evidence that J.O. attempted to rub his genitals on the victims, tried to remove the pants of one victim to measure that victimâs genitals, grabbed one of the victimâs genitals through his clothing, and tried to hug one of the victims while J.O. was naked supported his adjudications under section 18-3-404(1)(a). See People v. Pifer, 2014 COA 93, Â¶12 (rejecting argument that sexual contact âcould occur only by skin to skin contactâ).

 b. Indecent Exposure

 Â¶39Â Â Â Â Â Â Â  In People v. Randall, 711 P.2d 689, 692 (Colo. 1985), the supreme court explained that use of the word âlikelyâ in section 18-7-302(1) âindicates that the General Assembly intended the prohibited conduct to be measured by an objective test.â See People v. Barrus, 232 P.3d 264, 272 (Colo. App. 2009) (âAlthough the People were not required to prove that the witness was subjectively affronted or alarmed, the statute does require proof that the defendantâs conduct would tend to cause offense or fear to a reasonable person.â (internal quotation marks omitted)). As aÂ result, âevidence of a victimâs reaction to an act of indecent exposure or of the perpetratorâs awareness or comprehension of that particular reaction is not required to establish the offense.â Randall, 711 P.2d at 692 (emphasis added). See also Barrus, 232 P.3d at 272 (Insufficient evidence of indecent exposure where nothing showed âthat [the] defendant knew the witness saw him or that he attempted to show, exhibit, or display his genitals to her.â).

 Â¶40Â Â Â Â Â Â Â  After Randall and Barrus, section 18-7-302(1) was amended to add subsections (a) and (b), and to include the language âwith the intent to arouse or to satisfy the sexual desire of any personâ in subsection (a). Here, the evidence was sufficient to support J.O.âs adjudication under both subsections (a) and (b).

 Â¶41Â Â Â Â Â Â Â  As to section 18-7-302(1)(a), the evidence showed that J.O. knowingly exposed his genitals to both victims. And evidence that he also masturbated in front of them was sufficient to infer that he had exposed his genitals with the intent to satisfy his own sexual desire. Indecent exposure

 requires that the exposure occurs with intent to arouse or gratify the sexual desire of any person. As stated above, intent may be inferred from acts, words, and conduct of the accused. Even in the absence of directÂ testimony that appellant intended to gratify his own sexual desires by masturbating, the jury was rationally justified in inferring his intent to gratify his sexual desire from his actions.

 Shamam v. State, 280 S.W.3d 271, 278 (Tex. App. 2007) (emphasis and citation omitted); see also People v. Miralda, 981 P.2d 676, 679 (Colo. App. 1999) (âIntent may, of course, be established from circumstantial evidence and from the inferences that may reasonably be drawn from those circumstances.â).

 Â¶42Â Â Â Â Â Â Â  As to section 18-7-302(1)(b), one of the victims testified that J.O. âtook out his . . . penis and then started masturbating in front of us.â The victim testified that J.O. was âstroking his penisâ in the room and moving toward him. Such evidence is sufficient to conclude that J.O.âs conduct was likely to have caused the victims affront or alarm. See State v. Brown, 360 S.W.3d 919, 924 (Mo. Ct. App. 2012) (masturbating âon a well-lit street of multi-home residences, leaning against a car that was parked in front of the victimâs door, with an unobstructed view of her bedroom windowâ was likely to cause affront or alarm); see also State ex rel. A.T., 34 P.3d 228, 232 (Utah 2001) (Juvenile âshould have known his behavior would likely cause affront or alarm to the woman in theÂ parking lot. To an objective viewer, [the juvenile] conveyed the appearance of masturbation.â).

 Â¶43Â Â Â Â Â Â Â  Therefore, we agree that the evidence was sufficient to sustain J.O.âs adjudication.

 IV. Conclusion

 Â¶44Â Â Â Â Â Â Â  The judgment is affirmed.

 JUDGE GRAHAM and JUDGE TERRY concur.


 [1] We leave for another day whether a juvenile â who has been adjudicated on multiple counts of misdemeanor unlawful sexual conduct or indecent exposure, but not both, in the same proceeding â can be exempt from sex offender registration.

 [2] Consider the following example from Shaw v. National Union Fire Insurance Co. of Pittsburgh, Pa., 605 F.3d 1250, 1254 n.8 (11th Cir. 2010):

 Compare the phrase, âif you are a husband or a father, youâll understand,â with, âyou may eat an apple or an orange.â In the first example, the or is probably inclusive (people who are both husbands and fathers will probably understand, too), but in the second, it is probably exclusive (you are probably not allowed to eat both fruits).Â 

 [3] Although J.O. raised due process before the magistrate, he makes no meaningful argument on appeal that his due process rights were violated by the sex offender registration requirement. At least one division of this court has rejected a procedural due process argument related to sex offender registration for a juvenile. See People in Interest of C.B.B., 75 P.3d 1148, 1151 (Colo. App. 2003) (A juvenile âhas no procedural due process right to a hearing . . . before being required to register as a sex offender.â). In any event, we decline to address J.O.âs skeletal argument. See People v. Diefenderfer, 784 P.2d 741, 752 (Colo. 1989) (declining to address an argument because â[i]t is the duty of counsel for appealing parties to inform a reviewing court both as to the specific errors relied upon and as to the grounds, supporting facts and authorities thereforâ), superseded by statute as stated in People v. Burgess, 946 P.2d 565 (Colo. App. 1997); People v. Hill, 228 P.3d 171, 176 (Colo. App. 2009) (declining to address an argument where the defendant âprovide[d] no analysis or argument to support these conclusory statementsâ).

 [4] See McEntire v. Commonwealth, 344 S.W.3d 125, 128-29 (Ky. Ct. App. 2010) (âBecause registration as a sex offender is not âa punishment but simply a status,â we conclude that lifetime registration as a sex offender does not constitute cruel and unusual punishment.â); see also Cutshall v. Sundquist, 193 F.3d 466, 477 (6th Cir. 1999) (âWe have already concluded that [sex offender registration] does not impose punishment; it is regulatory in nature. Therefore, it does not violate the Eighth Amendmentâs prohibition on cruel and unusual punishments.â).

 [5] See In re Ronnie A., 585 S.E.2d 311, 312 (S.C. 2003) (finding that sex offender registration for juveniles is nonpunitive); see also In re J.W., 787 N.E.2d 747, 762 (Ill. 2003) (explaining that âthis court [has] rejected claims that the [sex offender] Registration Act and the Notification Law constitute punishment. We are not persuaded that requiring a juvenile sex offender to register . . . compels a different resultâ).

 [6] See also In re Kemon P., No. 2013-00128, 2014-MO-042, 2014 WL 5390543, at *1 (S.C. Oct. 22, 2014) (unpublished opinion) (mandatory sex offender registration requirement as applied to juveniles adjudicated delinquent does not constitute punishment); People ex rel. Birkett v. Konetski, 909 N.E.2d 783, 799 (Ill. 2009) (finding juvenileâs âargument based upon Roper unpersuasiveâ and âadher[ing] to our precedent holding that [the sex offender] registration requirement as applied to juveniles does not amount to a punishmentâ).

 [7] Cf. In re J.B., 107 A.3d 1, 19-20 (Pa. 2014) (â[T]he application of [Pennsylvaniaâs sex offender registration actâs] current lifetime registration requirements upon adjudication of specified offenses violates juvenile offendersâ due process rights by utilizing an irrebuttable presumption.â).




These opinions are not final. They may be modified, changed or withdrawn in accordance with Rules 40 and 49 of the Colorado Appellate Rules. Changes to or modifications of these opinions resulting from any action taken by the Court of Appeals or the Supreme Court are not incorporated here. 



Colorado Court of Appeals Opinions || August 27, 2015


Back